Adam **STEELE and Northern Herald Publications, Inc., a Minnesota Corporation, Plaintiffs,**

v.

The **CITY OF BEMIDJI, MINNESOTA, a Municipal Corporation, et al., Defendants.**

**Civil No. 99–1862(RHK/RLE).**

United States District Court, D. Minnesota.

Aug. 29, 2000.

Adam Steele, Bemidji, MN, pro se.

H. Patrick Weir, Angie E. Lord, Vogel Weir Bye Hunke & McCormick, Fargo, ND, for Forum Communications Co., Omar Forberg.

Jon K. Iverson, Paul D. Reuvers, Erstad & Riemer, Minneapolis, MN, for City of Bemidji, Alex Felix, Phil Shealy, Michael Porter, Jon Hunt, Robert Tell.

Carl C. Drahos, Drahos, Young & Kieson, Bemidji, MN, for Lynette Russell, Joseph Lueken, Lueken's Food Stores, William Batchelder, Terry Smart, Cenex Corporation, Countryside Restaurant,

Blackduck Restaurant, Country Side Restaurant, Maid–Rite Café, Southside Restaurant, Tim Saga, Highway Host Restaurant, and Festival Foods.

Peter D. Bergstrom, Thomas P. Carlson, Bergstrom Carlson, St. Paul, MN, for County of Beltrami, Tim Faver, David Frank.

Jennifer K. Eggers, Oppenhiemer Wolff & Donnelly, Minneapolis, MN, for J & B Foods.

Gregory D. Larson, for Superamerica of Park Rapids.

Bradford J. Roegge, Abrams & Smith, Minneapolis, MN, for Rich Johanneson, Johanneson's Inc.

William E. Flynn, Hassan Saffouri, Lindquist & Vennum, Minneapolis, MN, for Petro Pete's.

Kitty Lemer, Wadena, MN, pro se.

James Michael Njus, Teresa M. Jones, Meyer & Njus, Minneapolis, MN, for Developers' Diversified Realty Corp. d/b/a/ Paul Bunyan Mall.

### ORDER

KYLE, District Judge.

Before the Court are Plaintiffs' Objections to the August 3, 2000 Report and Recommendation of Magistrate Judge Raymond L. Erickson. This Court has conducted the required *de novo* review of the objected to portions of the Report and Recommendation. That review satisfies the undersigned that Judge Erickson's recommendations are fully supported by the facts and the law. Accordingly, the Report and Recommendation will be adopted.

Upon all the files, records and proceedings herein, **IT IS ORDERED:**

1. The Objections (Doc. No. 110) are **OVERRULED;**

2. The Report and Recommendation (Doc. No. 108) is **ADOPTED;**

3. Forum's Motions to Dismiss (Doc. Nos. 10 and 39) are **GRANTED;**

4. J & B's Motion to Dismiss (Doc. No. 51) is **GRANTED;**

5. Petro's Motion to Dismiss (Doc. No. 57) is **GRANTED;**

6. The Beltrami Defendants' Motion to Dismiss (Doc. No. 59) is **GRANTED;**

7. The Russell Defendants' Motion to Dismiss (Doc. No. 64) is **GRANTED;**

8. Johanneson's Motion to Dismiss (Doc. No. 79) is **GRANTED;**

9. Developers Diversified Realty Corporation's Motion to Dismiss (Doc. No. 82) is **GRANTED;**

10. The Bemidji Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. No. 88) is **GRANTED;**

11. Superamerica's Motion to Dismiss (see footnote 16 of the Report and Recommendation) is **GRANTED;**

12. The Injunction, which was issued by the District Court on November 19, 1999, is **DISSOLVED;** and

13. The Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

### ORDER and REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

#### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Motions of the various Defendants to Dismiss or, in the alternative, for Summary Judgment.[1]

---

1. Several of the Defendants, in addition to filing Motions to Dismiss, and/or for Summary Judgment, request that the Court impose sanctions against the Plaintiffs for the filing of this lawsuit. While the Plaintiffs' Complaint may be without legal merit, we have no evidence from which to conclude that it was filed in bad faith, or for an improper purpose. In addition, the Plaintiff Adam

Hearings on the Motions were conducted on February 24, 2000, and on June 29, 2000, respectively, at which time, the Plaintiff, Adam Steele ("Steele"), appeared *pro se;* the Defendants, Forum Communications Co., and Omar Forberg (collectively referred to as "Forum") appeared by Angie E. Lord, Esq.; the Defendants City of Bemidji, Alex Felix, Phil Shealy, Michael Porter, Jon Hunt, and Robert Tell (collectively referred to as "the Bemidji Defendants") appeared by Jon K. Iverson, Esq.; the Defendants Lynette Russell, Joseph Lueken, Lueken's Food Stores, William Batchelder, Terry Smart, Cenex Corporation, Countryside Restaurant, Blackduck Restaurant, Country Side Restaurant, Maid–Rite Café, Southside Restaurant, Tim Saga, Highway Host Restaurant, and Festival Foods, (collectively referred to as "the Russell Defendants") appeared by Carl C. Drahos, Esq.; the Defendants County of Beltrami, Tim Faver, and David Frank (collectively referred to as "the Beltrami Defendants") appeared by Peter D. Bergstrom, Esq.; the Defendant J & B Foods ("J & B") appeared by Jennifer K. Eggers, Esq.; the Defendant Superamerica of Park Rapids ("Superamerica") appeared by Gregory D. Larson, Esq.; the Defendant Paul Bunyan Mall ("Mall") appeared by Teresa Jones, Esq.; the Defendants Rich Johanneson, and Johanneson's Inc. ("Johanneson") appeared by Bradford J. Roegge, Esq.; the Defendant Petro Pete's ("Petro") appeared by Hassan Saffouri, Esq; and no appearance was made by, or on the behalf of the Plaintiff, Northern Herald Publications ("Northern Herald").

For reasons which follow, we recommend that the Motions of the Defendants be granted, thereby warranting the entry of a final Judgment in favor of each of the Defendants.

## II.  *Factual and Procedural History*

This action involves the Plaintiffs' claim, that the Defendants conspired to deprive them of their First Amendment Rights, by denying them the means to publish, or otherwise distribute, the Northern Herald newspaper.  On November 19, 1999,[2] Steele, and his newspaper company, Northern Herald, filed the original Complaint in this matter, which asserted claims against approximately thirty named parties, and "other unnamed persons and entities."  In their Complaint, Steele and

Steele's status, as a *pro se* litigant, militates against the imposition of sanctions. See, *DePugh v. Clemens*, 966 F.Supp. 898, 904 (W.D.Mo.1997) (noting that a Court should consider the attorney's available time, the plausibility of the legal argument, the party's *pro se* status, and the complexity of the issues in determining whether the party made a reasonable inquiry as to the law); see also, *Harrison v. Malchom*, 664 F.Supp. 1110 (N.D.Ohio 1987) (adopting a liberal attitude towards *pro se* Plaintiffs).  As such, the requests of the various Defendants' for an award of fees, and sanctions, is denied.

2.  On the same date as his Complaint was filed, Steele applied to the District Court, the Honorable James M. Rosenbaum presiding, for a Temporary Restraining Order, which was issued, on that same date, in the form of a handwritten Minute Order, which was subsequently memorialized in a brief Order of November 23, 1999 [Docket No. 8].  In total, the Minute Order reads as follows:

Plaintiffs [sic] motion for a TRO—Granted. Plaintiff may distribute material 5′-0″ from the door of the Post Office.  Plaintiff may not block access to public places.  Bond in the amount of $5.00.

[Docket No. 6].

While, under *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc), one of the factors which must be considered, in granting injunctive relief, is the likelihood that the moving party will succeed on the merits of his claim, we read the District Court's grant of equitable relief as principally to effect a preservation of the *status quo ante* until such time as the Court could reexamine the issue.  We draw this reading from the fact that, at the time of the Hearing on the Motion for a Temporary Injunction, none of the Defendants had been served with process, and only counsel for the City of Bemidji appeared, by telephone, at the Hearing.  Now, upon a full consideration of the Record submitted, we find no basis to continue the injunction previously ordered for precautionary purposes, and we recommend that the injunction be dissolved with an entry of Judgment for the Defendants.

Northern allege that "[t]his case deals with the outright prohibition, by the Defendant, the CITY OF BEMIDJI, acting through its City Attorney, ALAN FELIX, of the distribution, by Plaintiffs, of a newspaper in Bemidji, in violation of the rights of the Plaintiff." *Amended Complaint,* at ¶ 1.

Further, according to the Plaintiffs' Complaint, this action also arises from an alleged concerted effort, by individuals and businesses, within the City of Bemidji, to disrupt the distribution of the Northern Herald, either by refusing to sell the paper, or by refusing to allow Steele to distribute it, at certain locations. In addition, Steele alleges that he has been denied service in restaurants, bars, and other locations, has had his newspapers stolen, and has been generally vilified within the community. This "anti-Steele" campaign, assertedly, is the result of Steele's publication, in the Northern Herald, of an article that was "sharply critical of one Richard Morton (deceased), who was the owner of a saloon in Bemidji which had been identified as 'a police hang-out' ".[3]

Premised upon these allegations, the Plaintiffs have asserted several causes of action in their Complaint, including claims of: (1) failing to prevent a conspiracy, in violation of Title 42 U.S.C. § 1986; (2) harassing Steele's First Amendment rights; (3) conspiring to interfere with Steele's civil rights, in violation of Title 42 U.S.C. § 1985; (4) depriving Steele of his civil rights, in violation of § 1983; and (5) maliciously interfering with a business advantage. *Id.* As such, Steele seeks injunctive relief, as well as damages in the amount of $600 billion. *Id.,* at p. 21–22.

### III. *Discussion*

■ At the outset, we address a threshold flaw in any claim asserted by the Northern Herald. Throughout the course of this litigation, Steele has purported to represent the interests of the Northern

Herald, in which he is, apparently, the largest shareholder, as well as representing himself. As we expressed, at the time of our initial Pretrial Conference and, thereafter, throughout the subsequent stages of this litigation, under the controlling precedent of this, and other Circuits, a corporation may not be represented *pro se.* See, *Minute Order of February 24, 2000,* at 5, citing *Simitar Entertainment, Inc. v. Silva Entertainment,* 44 F.Supp.2d 986, 990 (D.Minn.1999), citing, in turn, *Ackra Direct Marketing Corp. v. Fingerhut Corp.,* 86 F.3d 852, 857 (8th Cir.1996) (explaining that corporation was technically in default from the date that its counsel was permitted to withdraw without substitution); see also, *United States v. Van Stelton,* 988 F.2d 70, 70 (8th Cir.1993); *Eagle Associates v. Bank of Montreal,* 926 F.2d 1305, 1308 (2nd Cir.1991).

■ Further, it is also firmly established that a layperson may not represent a corporation in judicial proceedings, as a corporation may only appear by legal counsel. See, *Minute Order of February 24, 2000,* citing *Simitar Entertainment, Inc. v. Silva Entertainment,* supra at 990, citing, in turn, *Mendenhall v. Goldsmith,* 59 F.3d 685, 687 n. 1 (7th Cir.1995) (dismissing appeal filed by layperson on behalf of corporation); *In re America West Airlines,* 40 F.3d 1058, 1059 (9th Cir.1994) ("Corporations and other unincorporated associations must appear in Court through an attorney."). Even sole shareholders of corporations are prohibited from representing such corporations *pro se.* See, *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2nd Cir. 1990); *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir.1985); *In re K.M.A., Inc.,* 652 F.2d 398, 399 (5th Cir.1981); *Capital Group, Inc. v. Gaston & Snow,* 768 F.Supp. 264, 265 (E.D.Wis.1991).

As we stated in our Minute Order:

---

**3.** Morton's obituary appeared in the Northern Herald as follows:

It is hard to speak positively of anyone's death, but the Bemidji community was greatly served by the removal of this dan-

gerous and malicious person from it. It is like a piece of trash gone from our streets. *** What goes around comes around ***. *Affidavit of Terry Smart, Ex. A.*

In response, Steele has cited to two cases from foreign jurisdictions, which stand for the proposition that, where the interests of the *pro se* litigant, and a closely-held corporation, are virtually synonymous, it is permissible for an agent of the corporation to represent the corporate entity before the Court. In the first of the cases cited by Steele, *In re Matter of Holliday's Tax Services, Inc.*, 417 F.Supp. 182 (E.D.N.Y.1976), a principal in the corporation was allowed to appear for that corporation where each was bankrupt, and neither could afford a lawyer. The *Holliday* Court found that, "[t]o require this corporation to appear by a lawyer is effectively to exclude it and its sole shareholder from the courts." *Id.* at 183. Thus, the New York Court found a narrow exception to the general rule, when the rule's application would deny a potential litigant its day in court.

Similarly, in *United States v. Priority Products, Inc.*, 615 F.Supp. 593, 596 (CIT 1985), the United States Court of International Trade applied an exception to the general rule when the corporation is closely-held, or when it is, in effect, the "alter ego" of an individual, who is also a party to the action. In *Priority Products*, as in *Holliday*, the focus of the Court's concern was upon the [potential] that a corporate litigant would be denied access to the Courts solely on the basis of its limited financial status.

*Minute Order of February 24, 2000*, at 6–7.

In response to these decisions, we stated:

Even if we were to adopt the holdings of the cases Steele cites, they are inapposite to the facts of this case, for there has been no competent showing that the absence of legal representation on Northern Herald's part is due to financial hardship. Unlike *Holliday*, Steele has not represented that he, or Northern Herald, is financially unable to retain the assistance of counsel. Rather, Steele merely represents that the absence of counsel for Northern Herald is the result of the refusal, by several attorneys, to assume the representation of that corporation. Under such circumstances, no exception to the general rule, that we have previously applied, appears.

Notwithstanding what may, ultimately, prove to be a successful basis to challenge Northern Herald's claim, \*\*\* we cannot now foreclose the potential that legal counsel will be secured \*\*\*.

*Id.* at 7–8.

Despite this express forewarning, Steele has failed to retain legal counsel, on the Northern Herald's behalf, not because of any financial hardship but, rather, because of counsels' disinterest in his claims. As such, our indulgence ends, and therefore, Northern Herald should be dismissed from this action, by virtue of its failure to obtain legal counsel. Notwithstanding this ruling, we independently find, and hereinafter detail, that the legal claims of the Northern Herald are wholly without merit and, therefore, the dismissal of the Northern Herald is also counseled on the merits of the claims it has asserted.

A. *Standard of Review.* In considering a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, we accept as true, in a hypothetical sense, all of the factual allegations of the Complaint, and we view those allegations in a light most favorable to the nonmoving party—here the Plaintiff. See, *Riley v. St. Louis County of Missouri*, 153 F.3d 627, 630 (8th Cir.1998), cert. denied, 525 U.S. 1178, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999); *Anderson v. Franklin County, Mo.*, 192 F.3d 1125, 1131 (8th Cir.1999); *Springdale Educ. Ass'n v. Springdale School Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). Under such an analysis, a Motion to Dismiss, for failing to state a claim, should only be granted if it is beyond doubt that no relief could be granted, under any set of facts, when the allegations are construed in a light most favorable to the pleader. *Hartford Fire Ins. Co. v.. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Scheuer v.*

*Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *County of St. Charles v. Missouri Family Health Council,* 107 F.3d 682, 684 (8th Cir.1997), cert. denied, 522 U.S. 859, 118 S.Ct. 160, 139 L.Ed.2d 105 (1997).

In deferring to the well-pleaded factual allegations, the Court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences. See, *Hanten v. School Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir.1999); *Springdale Educ. Ass'n v. Springdale School Dist.,* supra at 651; *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998); *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3rd Cir.1997); *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1103 (6th Cir.1995). Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990), citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

B. *Legal Analysis.* Since they involve different legal considerations, we separately address the arguments of the Defendants, to the extent that they warrant separate analysis.

1. *The Russell Defendants.* As previously outlined, Steele seeks relief under Sections 1983, 1985, and 1986, in large part because of an alleged conspiracy among the various Defendants to deny him his civil rights. Specifically, the crux of Steele's action against the Russell Defendants involves an alleged conspiracy, on their part, to prevent the sale of Steele's newspaper—the Northern Herald. According to Steele's Complaint: (1) Lueken, Cooperative Sampo, Jeff Wizner, Mrs. Wizner, Jacki Hall, Judy Black, Shari Mistic, Tim Saga, Saga of Bemidji, and Ron Dargis, conspired to interfere with Steele's First Amendment rights by refusing to allow Steele to distribute the Northern Herald within their private places of business; (2) Terry Smart refused to provide food and beverage service to Steele, in her restaurant, and conspired with others, known and unknown, to deprive Steele of bar and restaurant service, thereby depriving him of his civil rights; (3) Lynette Russell removed more than one copy of the Northern Herald from a public distribution stand, and conspired with prosecutors to avoid prosecution; and (4) William Batchelder violated Steele's civil rights by disparaging the Northern Herald to another private business owner, who then declined to distribute the Northern Herald. See, *Plaintiff's Amended Complaint,* at ¶¶ 10, 13, 15, 24, 32–34, 37, 40–43.

▨ a. *Steele's Section 1983 Claims.* The Civil Rights Act of 1871 provides every citizen with a right of action, at law or in equity, against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." *Title 42 U.S.C. § 1983.* In order to prevail on a Section 1983 claim, a plaintiff must establish that the actions complained of were committed by persons acting under color of State law, and that those actions deprived the plaintiff of a right, privilege, or immunity, which was secured by the Constitution, or by the laws of the United States. *Id.; Hamilton v. Schriro,* 74 F.3d 1545, 1549 (8th Cir.1996), cert. denied, 519 U.S. 874, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996); *Thomas v. Gunter,* 32 F.3d 1258, 1259 (8th Cir.1994).

▨ As a result of the "State action" requirement of Section 1983, the injuries, at issue, must have been caused by the exercise of some right, or privilege, that was created by the State, by a rule or conduct imposed by the State, or by a person for whom the State is responsible. *Parker v. Boyer,* 93 F.3d 445, 448 (8th Cir.1996). Although "State action," for Sec-

tion 1983 purposes, is ordinarily committed by officers and employees of a State governmental agency, Courts have, nonetheless, found that private parties can commit "State action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The test employed, in determining whether a private citizen's conduct constitutes "State action," is one of ascertaining whether the private citizen's conduct can be "fairly attributable to the State." *Id.*

■■■ Here, in the confines of Steele's Complaint, there is no allegation that the Russell Defendants were State actors, or that their decisions were attributable to the State, and therefore, Steele's Section 1983 claim against them must be dismissed. Even a liberal reading of the Complaint reveals that Steele has failed to allege that the Russell Defendants are State actors, or that their decision, to discontinue the distribution of the Northern Herald, or to refuse to serve Steele, within their private places of business, was attributable to the State. As such, under Section 1983, a viable claim has not been asserted against these Defendants.[4]

b. *Steele's Claims under Section 1985.* As noted, in addition to his claims under Section 1983, Steele alleges that all of the Defendants, including the Russell Defendants, acted in concert to make the Northern Herald unavailable to readers and, thereby, violated Section 1985. Section 1985(3) prohibits conspiracies to interfere with civil rights, and reads, in pertinent part, as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, ei-

ther directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*Title 42 U.S.C. § 1985(3).*

In order to state a claim for a civil rights conspiracy, under Section 1985(3), a Plaintiff must allege: (1) that the Defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be

---

4. Steele's Complaint, when read in its entirety, seems to imply that everyone in Bemidji, including State actors, conspired to keep the Northern Herald outside of the viable market. The Supreme Court has held, that an otherwise private person acts "under color of" State law when engaged in a conspiracy with State officials to deprive another of Federal rights. See, *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

However, "mere allegations of joint action or a conspiracy do not demonstrate that *** defendants acted under color of state law *** [and] are not sufficient to survive a motion to dismiss." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998). Consequently, even though we have indulgently read Steele's Complaint, and afforded it a broad reading, the dismissal of his Section 1983 claim would, nonetheless, be required.

done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." *Schneewies v. Northwest Technical College*, 1998 WL 420564 at *11 (D.Minn. June 1, 1998), citing *Title 42 U.S.C. § 1985(3);* see also, *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996); *Occhino v. Lannon*, 150 F.R.D. 613, 621 (D.Minn.1993), aff'd, 19 F.3d 23 (8th Cir. 1994), cert. denied, 513 U.S. 840, 115 S.Ct. 125, 130 L.Ed.2d 69 (1994).

Here, two defects render Steele's Section 1985 claim, against the Defendants, untenable as a matter of law. First, in order to elude "the constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338(1971), "the Supreme Court has interpreted it to apply only to conspiracies which were motivated by an invidious, class-based, discriminatory animus." *Schneewies v. Northwest Technical College*, supra at *12, citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 834–35, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Under this interpretation, Steele

must allege a discriminatory purpose "in that the defendants selected the particular course of action 'because of not merely in spite of its adverse effects upon an identifiable group.'" *Schneewies v. Northwest Technical College*, supra at *12, citing *Andrews v. Fowler*, 98 F.3d 1069, 1079–80 (8th Cir.1996), in turn quoting *Bray v. Alexandria Women's Health Clinic*, supra at 272, 113 S.Ct. 753.

Here, Steele's Complaint is devoid of any suggestion that the alleged conspiracy, among the Defendants, was motivated by an invidious, class-based animus against him, and he has neglected to identify himself as a member of any protected class. Where, as here, the Plaintiff has not alleged that the Defendants were motivated by a class-based, discriminatory animus, he has failed to state a Section 1985(3) claim. See, *Rasmussen v. Larson*, 863 F.2d 603, 605 (8th Cir.1988); *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982). Further, even if Steele's Complaint contained such an allegation, it is clear that he, and the Northern Herald, are not members of a protected class, as contemplated by section 1985.[5] See, e.g., *Hutchens v. Beckham*, 521 F.Supp. 426, 429 (S.D.Ga.1981) (holding that newspaper publishers are not a protected class under Section 1985). As such, Steele's Section 1985 claim should be dismissed.[6]

---

**5.** In his combined Memorandum, Steele contends that his Complaint states a valid claim, under the Sherman Anti–Trust Act. However, a review of Steele's Complaint reveals that it is devoid of any reference to the Sherman Anti–Trust Act. Specifically, Steele's Amended Complaint states, as pertinent, "[a]dditionally, Plaintiff asserts [a] claim for relief *** under such other laws of the United States, *** including but not limited to anti-trust provisions, *** as may be applicable." *Amended Complaint*, at ¶ LXI. As a consequence, the Complaint fails to conform to the procedural requirements of Rule 8(a), Federal Rules of Civil Procedure, and even if we were to find that a valid Sherman Anti–Trust Act claim had been raised, by Steele, its dismissal would be required, because his Complaint lacks any allegation that trade has been restricted so as to affect interstate commerce. In order for a Federal Court to assert jurisdiction, under a Sherman Anti–Trust Act claim,

there must be an allegation that interstate commerce has been affected by the restraint of trade. See, *Alabama Homeowners, Inc. v. Findahome Corp.*, 640 F.2d 670 (5th Cir.1981) (dismissing anti-trust action because there was no evidence that the publication of real estate guides, to two Alabama Counties, had a substantial affect on interstate commerce). Here, Steele's Complaint claims that the actions of the referenced Defendants have limited the distribution of the Northern Herald within the City of Bemidji, and elsewhere, in northern Minnesota. However, there is no allegations that interstate commerce has been adversely affected.

**6.** Because Steele has failed to state a valid claim against the Defendants, under Section 1985, his Section 1986 claim must be dismissed. Where no action is permitted under Section 1985, no action will lie under Section

c. *Malicious Interference with a Business Advantage.* Read liberally, Steele's Complaint could be construed to allege that the various Defendants, in this action, collectively conspired, and acted, in a manner that discouraged the distribution of the Northern Herald, by encouraging private businesses to discontinue its sale within their places of business.[7] According to Steele, these allegations state a claim for a malicious interference with a business advantage.

In Minnesota, the tort of intentional interference with a business advantage has been applied once, in the case of *Tuttle v. Buck,* 107 Minn. 145, 146, 119 N.W. 946, 946 (Minn.1909). There, the plaintiff owned a barber shop, and alleged that the defendant maliciously opened another barbershop solely as an effort to destroy the plaintiff's business. Specifically, the Plaintiff alleged that:

> [T]he defendant, wrongfully, unlawfully, and maliciously endeavored to destroy plaintiff's said business and compel plaintiff to abandon the same. That to that end he has persistently and systematically sought, by false and malicious reports and accusations of and concerning the plaintiff, by personally soliciting and urging plaintiff's patrons no longer to employ plaintiff, by threats of his personal displeasure, and by various other unlawful means and devices, to induce, and has thereby induced, many of said patrons to withhold from plaintiff the employment by them formerly given.

*Id.*

According to the Minnesota Supreme Court, these specific allegations were sufficient to state a cause of action, against the defendant barber shop owner.

In contrast, Steele has failed to proffer any specific allegations that would be sufficient to state a valid claim, under the holding in *Tuttle.* Specifically, Steele has failed to allege that any of the specific parties, who are named in his Complaint, acted maliciously in an effort to prevent the distribution of the Northern Herald. In his Complaint, Steele alleges that a group of unknown Defendants approached the Defendants, who are named in the Complaint—i.e., various private business owners in the Bemidji area—and encouraged them, by using intimidation and threats of a boycott, to refuse to distribute the Northern Herald. See, *Amended Complaint,* at ¶ XLI.[8] However, Steele's Complaint fails to allege that any of the named Defendants committed overt acts, in an attempt to inhibit the distribution of the Northern Herald. Rather, according to Steele's Complaint, the Defendants were the targets of those who attempted to hinder the Northern Herald's distribution and, therefore, by those who elected to discontinue their business relationship with Steele. Such actions are insufficient,

---

1986. See, *McCalden v. California Library Assoc.,* 955 F.2d 1214, 1223 (9th Cir.1990), cert. denied 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992). Section 1986 is a misprision statute and is derivative in nature. See, *McIntosh v. White,* 582 F.Supp. 1244, 1250 (E.D.Ark.1984). "It is axiomatic that if the plaintiff is unable to state or prove a claim under Section 1985, the derivative claim under Section 1986 must fail as well." *Id.,* citing *Williams v. St. Joseph Hosp.,* 629 F.2d 448 (7th Cir.1980); *Tollett v. Laman,* 497 F.2d 1231 (8th Cir.1974). Consequently, as Steele's Section 1985 claim cannot survive, his Section 1986 claim must also be dismissed.

7. Specifically, Steele's Complaint alleges that "[t]he Defendants, who are named as 'other unnamed persons and entities' includes a group of Defendants that have organized and acted in concert to discourage and prevent, both by lawful and unlawful means, the sale or other distribution of the Northern Herald in Bemidji." *Amended Complaint,* at ¶ X.

8. Steele's Complaint also alleges that the Defendant William Batchelder personally approached a retailer in Bemidji and persuaded it to discontinue its distribution of the Northern Herald. See, *Complaint,* at ¶ XLII. However, this single act, without more, is insufficient to state a claim for malicious interference with a business advantage, as outlined in *Tuttle v. Buck,* 107 Minn. 145, 119 N.W. 946 (1909).

however, to provide a basis for his claimed cause of action. As the Supreme Court stated, in *Federal Trade Commission v. Raymond Bros—Clark, Co.*, 263 U.S. 565, 574, 44 S.Ct. 162, 68 L.Ed. 448 (1924):

> It is the right, 'long recognized,' of a trader engaged in an entirely private business, 'freely to exercise his own independent discretion as to the parties with whom he will deal.' *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919), see also *United States v. Trans–Missouri Freight Ass'n*, 166 U.S. 290, 320, 17 S.Ct. 540, 41 L.Ed. 1007 (1897); *Dueber Watch–Case Co. v. E. Howard Watch & Clock Co.*, 66 Fed. 637, 645 (2nd Cir. 1895); *Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co.*, 227 Fed. 46, 48 (2nd Cir.1915); *Wholesale Grocers' Ass'n v. Federal Trade Comm.*, 277 Fed. 657, 664 (5th Cir.1922); *Mennen Co. v. F.T.C.*, 288 F. 774, 780 (2nd Cir.1923); *Booth & Bro v. Burgess*, 72 N.J.Eq. 181, 190, 65 A. 226; *2 Cooley on Torts* (3d Ed.) 587. Thus a retail dealer 'has the unquestioned right to stop dealing with a wholesaler for reasons satisfactory to himself.' *Eastern States Retail Lumber Dealers' Ass'n v. United States*, 234 U.S. 600, 614, 34 S.Ct. 951, 58 L.Ed. 1490 (1914); *United States v. Colgate & Co.*, supra, 250 U.S. at 307, 39 S.Ct. 465. \*\*\* Likewise a wholesale dealer has the right to stop dealing with a manufacturer 'for reasons sufficient to himself.'

As private businesses, the Defendants in this action, including the Russell Defendants—who refused to do business with Steele—cannot lawfully be forced, against their will, to distribute a publication which they find to be offensive. As such, Steele's claim for a malicious interference with a business advantage, must be dismissed.

2. *Steele's Claims against J & B.* In his Complaint, Steele alleges that, along with the Russell Defendants, J & B was involved in a conspiracy to deprive Steele of his civil rights, in violation of Section 1985, by refusing to allow the distribution of the Northern Herald. With no particular reference to J & B, Steele also alleges, under Section 1983, a cause of action, by broadly stating that "[t]he action by Defendants \*\*\* constitutes Deprivation of Civil Rights under 42 U.S.C. Sec.1983, by way of interfering with First Amendment rights in places, open to the public, which are public places for the exercise of First Amendment rights." *Amended Complaint*, at ¶ XLV. Steele also broadly alleges claims against "the Defendant" for malicious interference with a business advantage. Although it is unclear whether J & B is included within these causes of action, it is evident that J & B's dismissal is appropriate, on the legal grounds that we have previously detailed, and need not now repeat.[9]

3. *Steele's Claims against the Beltrami Defendants.* The Beltrami Defendants, Tim Favor ("Favor"), and David Frank ("Frank"), are a part of this lawsuit, because of their positions as the County Attorney, and assistant to the County Attorney, of the Defendant Beltrami County.[10] In his Compliant, Steele contends that these Defendants are legally responsible for damages, because they failed to criminally prosecute a person, who was identified by Steele, for the theft of newspapers from a café in Bemidji. See, *Amended Complaint*, at XXXII–XXXIV.

---

**9.** For purposes of brevity, we will forego a discussion of the basis for the dismissal of Johanneson, Superamerica, Mall, and Petro, from this cause of action. Suffice to say, the allegations against these Defendants are substantively the same, as those that were proffered against the Russell Defendants, and J & B. Essentially, these Defendants merely represent additional private businesses that, by refusing to distribute the Northern Herald, became embroiled within this lawsuit. The legal basis for the dismissal of these Defendants is substantively the same as those which applied to the Russell Defendants, and J & B. Therefore, further discussion of these same issues would be redundant.

**10.** The City of Bemidji has entered into a contract with the County of Beltrami, and the County Attorney, to have the County Attorney prosecute misdemeanors.

■ As urged by the Beltrami Defendants, Steele's claims against Favor and Frank should be dismissed, because of the absolute immunity that prosecutors enjoy from civil suits when engaged in their official duties as a prosecutor. See, *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). "Absolute immunity protects a prosecutor from damages based on his decision not to prosecute." *Mullen v. United States*, 1991 WL 219414 at * 2 (W.D.Mo.1991), citing *Schloss v. Bouse*, 876 F.2d 287, 290 (2nd Cir.1989).

■ Here, Steele appears to assert that he has a constitutionally guaranteed right to have persons, whom he has identified as being thieves, prosecuted. Steele also contends that since Favor and Frank failed to prosecute the alleged thieves, they are liable for damages. As noted, however, this claim has no legal basis, since there is no individual right to have another person prosecuted for a crime. Decisions on whether to prosecute an individual rest solely with the prosecutor, and are entitled to absolute immunity from damages claims from persons dissatisfied with the decision made. Accordingly, this aspect of Steele's Complaint should be dismissed.

■ Further, with respect to Steele's claim against the County, it is clear that this claim should be dismissed, because Steele has failed to allege that his claimed damages are the result of any unconstitutional policy or custom on the part of the County. It is by now hornbook law that a municipality may not be held vicariously liable, under Section 1983, for the unconstitutional acts of it employees. See, *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999); *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995). Rather, to prevail on his Section 1983 claim, which seeks to impose liability upon the County, Steele must prove that the County had an official policy, or a widespread custom, that was the moving force behind a constitutional violation. See, *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir.1998), citing *Monell v. Department of Social Servs.*, supra at 694, 98 S.Ct. 2018; *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 402, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998); *Kinman v. Omaha Pub. Sch. Dist.*, 94 F.3d 463, 467 (8th Cir.1996); see also, *Marti v. City of Maplewood*, 57 F.3d 680, 684 (8th Cir.1995). The requirement of an official policy ensures that a municipality is liable only for those acts which may fairly be said to be those of the municipality. See, *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, supra. "An alleged illegal custom must be widespread and may only subject a [municipality] to liability if it is pervasive enough to have the 'force of law.'" *Id.* Here, Steele has failed to allege that the County's behavior was the result of the existence of a policy or custom, therefore, this claim should be dismissed.[11]

---

11. Steele also alleges that, under *Veres v. County of Monroe*, 364 F.Supp. 1327, 1330 (E.D.Mich.1973), he is entitled to a respondeat superior theory of recovery, on his Section 1986 claim against the County. Steele never directly alleges this claim, in his Complaint, against the County. However, if such a claim had properly been pled, its dismissal would be required, because a Section 1986 claim cannot be brought against a municipality. As the Court observed in *Veres:*

[The] plaintiff bases his cause of action on § 1986. That section makes liable every "person" who, having knowledge of certain

4. *Steele's Claims against Forum.* In addition to his claims against the City of Bemidji, city officials, law enforcement officers, and the residents and businesspeople of the City of Bemidji, Steele's Complaint contains allegations directed against Forum, as follows:

> Defendant FORUM COMMUNICATIONS, INC. is in the business of printing newspapers in Bemidji. As a printer, it performs contract printing for many independent local and regional newspapers. *** Defendant OMAR FORBERG is an employee of Defendant FORUM COMMUNICATIONS, INC., and is the highest ranking officer over [its] Bemidji operations. *** Since September, 1995, Plaintiff[s] *** had contracted with Defendant FORUM COMMUNICATIONS, INC. and [its] predecessor owners *** for printing of the Northern Herald newspaper. ***
> In January, 1998, Defendant OMAR FORBERG told Plaintiff ADAM STEELE that Defendant FORUM COMMUNICATIONS, INC. would no longer print the Northern Herald Newspaper. *** As a result of the actions of Defendants OMAR FORBERG and FORUM COMMUNICATIONS, INC., Plaintiffs have sustained damages by way of additional time and expense to have the Northern Herald newspaper printed elsewhere, and have suffered damage due to deprivation of First Amendment rights.

*Amended Complaint,* at ¶¶ XLVIII – LII. As alleged in Steele's Complaint, these assertions provide the basis for Steele's claims against Forum, under Sections 1983, 1985, and 1986, as well as for his claim of malicious interference with a business advantage. However, because the Forum Defendants are private actors, who merely refused to do business with Steele, their dismissal from this cause of action is required, under the same bases which mandate the dismissal of the Russell Defendants, J & B, Johanneson, Superamerica, Mall, and Petro.

5. *Steele's Claims against the Bemidji Defendants.* Collectively, in addition to the City itself, the Bemidji Defendants are comprised of the City Attorney, the City Manager, the Chief of Police, and two police officers, from the City of Bemidji. As outlined in Steele's Complaint, the Bemidji Defendants are a part of this lawsuit primarily because of their enforcement of Bemidji City Ordinances 10.31, and 6.39, and because of the Bemidji Police Department's role in refusing to prosecute individuals for the alleged thefts of the Northern Herald from public distribution stands.

Specifically, according to Steele's Complaint, on August 6th, 1998, Alan Felix ("Felix"), the Bemidji City Attorney, wrote a letter to Steele, which read as follows:

> Your alleged "Notice of Claim" has brought to my attention the fact that you are using and have attempted to use public property to personally advertise and sell your alleged publication without first having obtained a Solicitation Permit under Section 6.39 of the City Code, not to mention a written permit from the City Council to use public property as is required under City Code Section 10.31. In issuing either permit, the City may

---

wrongs conspired to be done, and having the power to prevent those wrongs, neglects to do so. The "wrongs" referred to are the wrongs "mentioned in § 1985." Thus, by its own terms, § 1986 is to be read in conjunction with § 1985. Moreover, § 1986 was enacted as part of the same Civil Rights Act of 1871, 17 Stat. 15, of which § 1985 is a part. Since § 1986 shares with § 1985 a common legislative source, since both sections use the word "persons" to identify proper defendants, and since both were enacted by the same Congress which believed it could not constitutionally impose civil liability on municipalities, the word "persons" must carry the same meaning in each section. For this reason, the County of Monroe, since it is not a "person" within the meaning of §§ 1983 or 1985, is similarly not a "person" for purposes of § 1986.

*Id.*

As this holding makes clear, the dismissal of Steele's cause of action against the County, under Section 1986, is required.

impose reasonable time and place conditions/restrictions.

\* \* \* \* \* \*

Additionally,, neither permit entitles occupation of a stationery location and, if granted, a permit is subject to the judgment of law enforcement whether such operation might impede or inconvenience the public use of such property.

\* \* \* \* \* \*

Also, be advised that a violation of any one or other of the City Code sections mentioned in this notice is a misdemeanor. If you find these code requirements onerous, I can suggest that you consider the industry-wide use of a pay distribution box to dispense your product. It is unfortunate if you cannot find willing local, private outlets. Of course, in light of this community's apparent unwillingness to embrace your ideas, another option may be your consideration of relocation to another community within this State or elsewhere which may be less concerned about the safety of its citizens and more willing to embrace your way of thinking.

*Amended Complaint, Ex. A.*

According to Steele, this letter was just the initial step in the prohibition, by Felix, of the sale or free distribution of the Northern Herald at curbside. See, *Amended Complaint,* at ¶ XV. Apparently, several days after his receipt of the letter, Steele was approached by the Defendant Michael Porter ("Porter"), who is a member of the City of Bemidji Police Department, while Steele was distributing the Northern Herald in front of the Bemidji Post Office, and was told that, if he continued his distribution, he would be arrested. *Id.* Steele was then informed that this curbside distribution was a violation of the Bemidji City Ordinance. *Id.* at ¶ XIX.

As argued by Steele, Felix further acted to impede the distribution of the Northern Herald by failing to prosecute past thefts of the paper, and by requiring that requests, by Steele, for public information, be submitted in writing, and submitted for approval. *Id.* at ¶¶ XXI, XXIII. In addi-

tion, Steele contends that other officers from the Bemidji Police Department acted to prevent him from distributing the Northern Herald in front of the Paul Bunyan Mall, which is located within the City of Bemidji. *Id.* at ¶¶ XXVII–XXVIII.

In response to these allegations, the Bemidji Defendants have filed a Motion to Dismiss or, alternatively, for Summary Judgment.

a. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. *Carter v. St. Louis Univ.,* 167 F.3d 398, 400 (8th Cir.1999); *Prudential Ins. Co. v. National Park Med. Center, Inc.,* 154 F.3d 812, 818 (8th Cir.1998). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genu-

ine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.,* supra at 256, 106 S.Ct. 2505; *Chism v. W.R. Grace & Co.,* 158 F.3d 988, 990 (8th Cir.1998). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d 1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* supra at 323, 106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.,* 60 F.3d 437, 441 (8th Cir. 1995); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross,* 992 F.2d 162, 163 (8th Cir. 1993).

b. *Legal Analysis.* As we have already noted, under Section 1983, relief is available only when the claimant has been deprived of some constitutional right by a person who was acting under color of State law. See, West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Here, Steele's Complaint properly alleges

that the Bemidji Defendants are State actors, who were acting under the color of State law, when his constitutional rights were violated. As such, Steele's Section 1983 pleadings are sufficient to withstand a Motion to Dismiss, under Rule 12(b)(6), Federal Rules of Civil Procedure.[12] Nevertheless, a review of the evidence submitted by Steele, and the Bemidji Defendants, demonstrates that the Bemidji Defendants Motion for Summary Judgement should be granted.

■ As argued by Steele, the enforcement of the Bemidji Solicitation Ordinance, by the Bemidji Defendants, violated Section 1983, because the Ordinance is unconstitutional on its face. Bemidji City Code Section 6.39 regulates solicitors within the City of Bemidji, and provides as follows:

It is unlawful for any peddler, business solicitor, contribution solicitor, *** or transient merchant to engage in any such business within the City of Bemidji without first obtaining a permit *** in compliance with the provisions of this ordinance.

The terms of this ordinance do not include the acts of persons selling property at wholesale to dealers in such articles, nor to newsboys ***.

*Bemidji City Code Section 6.39, Subdivision (3)(8).*[13]

As noted by these Defendants, Steele will not be able to prevail on his Section 1983 claim against the Bemidji Defendants, unless he establishes that Sections 6.39, and 10.31,[14] are unconstitutional on their face,

---

**12.** Steele's claims against the Bemidji Defendants, under Title 42 U.S.C. §§ 1985 and 1986, should be dismissed on the grounds previously addressed. In addition, because Steele has failed to allege that the Bemidji Defendants acted overtly in an attempt to prevent the distribution of the Northern Herald at any of the numerous private businesses within the City of Bemidji, his claim for a malicious interference with a business advantage should also be dismissed, as it relates to these Defendants.

**13.** Steele claims that he falls within the newsboy exception to the Bemidji City Ordinance, however, the Ordinance specifically excludes only "an attempted solicitation of a newspaper subscription in which the solicitor is a **minor child** engaged in both the delivery and

sale of the newspaper." *Memorandum in Support of the Bemidji Defendants Motion to Dismiss, or for Summary Judgment, Affidavit of Jon K. Iverson, Ex. C, Bemidji City Code Section 6.39, Subdivision (2)(G)* [emphasis added].

**14.** Bemidji City Code Section 10.31 regulates public obstructions by making it "unlawful for any person to place, deposit, display or offer for sale, any fence, goods, or other obstructions upon, over, across, or under any public property without first having obtained a written permit from the Council, and then only in compliance in all respects with the terms and conditions of such permit, and taking precautionary measures for the protection of the public ***."

or are being applied in a discriminatory manner. See, *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In determining the constitutionality of the Ordinances, we must scrutinize them under the Supreme Court's test for determining whether a statute violates the First Amendment's freedom of speech guarantee. As stated in *Arlington County Republican Comm. v. Arlington County, Va.*, 983 F.2d 587, 593 (4th Cir.1993):

> Under this test, we first question whether the [ordinance] burdens any speech. If we find any burden, we must then determine whether the [ordinance] imposes content neutral or content based restrictions. If it is content neutral, we must then decide whether the [ordinance] serves any substantial interest of [the City]. If the [City] identifies any interest, we must then determine whether the [City] narrowly tailored the [ordinance] to further this stated interest. Finally, we must also assess whether the [ordinance] leaves open ample alternative means for communicating the desired message. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

Although the Bemidji Ordinances burden speech, it is clear that they do so in a content-neutral manner.[15] Both Section 6.39, and Section 10.31, restrict the ability of individuals from "selling," or "peddling" goods, without regard to the type of goods that are being distributed. In addition, both Ordinances benefit the City of Bemidji's legitimate, substantial interests by controlling the number of street peddlers, and vendors, that are allowed to conduct their business within the City, particularly on public streets and walkways. Regulating this type of conduct is important for the safety and convenience of citizens, who are attempting to use the City's streets and walkways for different types of transportation.

Moreover, with respect to Section 6.39, the City of Bemidji is attempting to regulate individual solicitors, so as to preserve the aesthetics of the City, and in order that consumers would not be harassed, and thereby deterred, from shopping at the City's numerous retail outlets. As the Supreme Court explained, in *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984):

> In *Kovacs v. Cooper*, 336 U.S. 77, 79, 69 S.Ct. 448, 93 L.Ed. 513 (1949), the Court rejected the notion that a city is powerless to protect its citizens from unwanted exposure to certain methods of expression which may legitimately be deemed a public nuisance. In upholding an ordinance that prohibited loud and raucous sound trucks, the Court held that the State had a substantial interest in protecting its citizens from unwelcome noise. In *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974), the Court upheld the city's prohibition of political advertising on its buses, stating that the city was entitled to protect unwilling viewers against intrusive advertising that may interfere with the city's goal of making its buses "rapid, convenient, pleasant, and inexpensive." *** These cases indicate that the municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression.

Similarly, the Supreme Court has made clear that concerns for traffic safety represent substantial municipal interests. See, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), citing *Railway Express Agen-*

---

**15.** The Bemidji Defendants admit, for the purposes of this Motion, that the questioned Ordinances could "prevent [Steele] from distributing the Northern Herald whenever, wherever and however he wants." *Memorandum in Support of the Bemidji Defendants Motion to Dismiss*, at 14.

*cy, Inc. v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949).

Since the City of Bemidji's Ordinances serve a substantial public interest, we must determine whether these Ordinances have been narrowly tailored so as to serve those interests. Here, the Ordinances merely require street vendors to obtain a permit prior to engaging in the prohibited conduct. As argued by the Bemidji Defendants:

> The permit application itself is restricted to information on the type of business that will be conducted and information on the applicants criminal and business background. The ordinances limit the discretion of City officials to deny or restrict permits by requiring a standard investigation by the local police and a full and open hearing by the city council.

*Memorandum in Support of the Bemidji Defendants Motion to Dismiss,* at 16.

These processes serve to ensure that individuals, who wish to legitimately distribute materials within the City of Bemidji, such as the Northern Herald, may do so, while prohibiting only those who are likely to harass citizens, or disrupt public safety. As such, the Bemidji Ordinances appear narrowly tailored to further the City's legitimate, substantial interests.

Finally, and most importantly, the challenged Ordinances leave open the possibility for alternative channels of communication. Both Ordinances allow for sales of publications from existing businesses, complimentary distribution by leaving stacks of newspapers at commercial establishments, and for the operation of coin operated distribution boxes. Further, individuals who are unable to obtain a permit are free to distribute their products or publications via the mails. These factors demonstrate that the Bemidji City Ordinances leave open a variety of alternative means by which an individual can communicate a desired public message. As such, neither Section 6.39, nor Section 10.31, are unconstitutional.

Moreover, because the Bemidji Defendants are entitled a to qualified im-

munity, Steele's Section 1983 claim cannot survive their Motion for Summary Judgement. Government officials are entitled to a qualified immunity from liability so long as their challenged conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known at the time the action occurred." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome an assertion of qualified immunity at the Summary Judgment stage, "a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right." *Mettler v. Whitledge,* 165 F.3d 1197, 1202 (8th Cir.1999), quoting *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir.1998).

We have already concluded that Sections 6.39, and 10.31 are constitutional, and therefore, their enforcement, by the Bemidji Defendants, does not violate any of Steele's clearly established rights. Further, although Steele contends that his rights were violated, by the Bemidji Defendants', and that the Beltrami Defendants' decision, not to prosecute the alleged thieves of copies of the Northern Herald, we have already rejected this argument, because of the absolute immunity afforded to prosecutors in making such decisions. Finally, while Steele contends that his rights were somehow violated by Felix's request that his petitions for information, to the City, be made in writing, he has failed to present any evidence to demonstrate that any of his requests were denied and, therefore, he cannot demonstrate that any of his constitutional or statutory rights were violated. Therefore, we recommend that the Bemidji Defendants' Motion for Summary Judgment be granted, in all respects.

NOW, THEREFORE, It is—

ORDERED:

That the Russell Defendants' Motion for monetary sanctions [Docket No. 64] is DENIED.

AND, It is—

RECOMMENDED:

1. That Forum's Motions to Dismiss [Docket Nos. 10 and 39] be granted.

2. That J & B's Motion to Dismiss [Docket No. 51] be granted.

3. That Petro's Motion to Dismiss [Docket No. 57] be granted.

4. That the Beltrami Defendants' Motion to Dismiss [Docket No. 59] be granted.

5. That the Russell Defendants' Motion to Dismiss [Docket No. 64] be granted.

6. That Johanneson's Motion to Dismiss [Docket No. 79] be granted.

7. That Developers Diversified Realty Corporation's Motion to Dismiss [Docket No. 82] be granted.

8. That the Bemidji Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment [Docket No. 88] be granted.

9. That Superamerica's Motion to Dismiss be GRANTED.[16]

10. That the Injunction, which was issued by the District Court, on November 19, 1999, be summarily dissolved.

---

**16.** Although Superamerica failed to file a formal Motion to Dismiss with the Clerk of Court, it did submit, prior to the Hearing, a Memorandum in Support of its Motion to Dismiss. Also, at the Hearing, Superamerica appeared by Gregory D. Larson, Esq., to argue for its dismissal, and no party, including Steele, or the Northern Herald, objected to that appearance. As such, we view Superamerica's procedural miscue to be harmless, and recommend that it be dismissed from this action.