**Adam STEELE et al.**

v.

**CITY OF BEMIDJI et al.**

**No. 99–CV–1862(JMR/RLE).**

United States District Court,
D. Minnesota.

Jan. 2, 2003.

Adam Steele, Bemidji, MN, pro se.

Jon K. Iverson, Paul D. Reuvers, Jason J. Kuboushek, Iverson Reuvers, Bloomington, MN, for defendant.

## ORDER

ROSENBAUM, Chief Judge.

The individual defendants, Bemidji City Attorney Alan Felix, City Manager Phil Shealy, Police Sergeant Michael Porter, Police Officer Jon Hunt, and Police Chief Robert Tell, ask this Court to find that they are protected from suit by qualified immunity. The Court finds each moving defendant, excepting only City Attorney Felix, is entitled to qualified immunity. Accordingly, defendants' motion is granted in part and denied in part.[1]

### I. *Background*

This case arises from plaintiff Steele's efforts to distribute a periodical called "The Northern Herald" in Bemidji, Minnesota. Mr. Steele complains that his constitutional rights were infringed on two occasions when he attempted to distribute the "Herald."

First, in February 1998, Mr. Steele attempted to sell the "Herald" near Bemidji's Paul Bunyan Mall. On that occasion, Officer Jon Hunt ordered him to stop selling the Herald near the Mall. Mr. Steele complained to the City of Bemidji and, on August 3, 1998, served the City with a Notice of Claim. Bemidji City Attorney

---

1. Subsequent to this motion's briefing and oral argument, plaintiff Steele sought leave to file a supplemental affidavit and exhibits. This request does not comply with the District of Minnesota's Local Rule 7.1(b)(1)(B), which requires pro se litigants to file affidavits and exhibits at least nine days prior to a hearing. Accordingly, plaintiff's request is denied.

Felix responded to the Notice of Claim by letter dated August 5, 1998. His letter explained that, in order to distribute the Herald, Steele must seek a solicitation permit pursuant to Section 6.39 of Bemidji's City Code, and a written permit pursuant to Section 10.31 of that Code.[2] Mr. Felix's letter told Mr. Steele he must secure insurance, with policy limits equal to those required by the City, and that a substantial bond would be required to obtain the necessary permits.[3] *See id.*

Finally, Felix's letter warned Mr. Steele that it was a misdemeanor to violate either ordinance, and informed him that, "in light of the community's apparent unwillingness to embrace your ideas, another option may be your consideration of relocation to another community within this State or elsewhere which may be less concerned with the safety of its citizens and more willing to embrace your way of thinking." *Id.*

The second incident about which Mr. Steele complains occurred later in August, 1998. On this occasion, Mr. Steele attempted to distribute the Herald free of charge outside the Post Office in Bemidji. As he attempted to do so, Sergeant Porter ordered Mr. Steele to stop "soliciting." When Steele responded that he was giving the paper away as opposed to selling it, Porter said he would talk with Felix and take Steele "to jail, today" if appropriate. Steele, himself, contacted Felix. This time, Mr. Felix informed him Bemidji's

obstruction ordinance, Section 10.31, barred Steele from giving the paper away on one of the City's public sidewalks.

Based on these facts, Mr. Steele and the Herald's publisher filed suit against numerous defendants, including several city employees, in November, 1999. On November 23, 1999, this Court issued a temporary restraining order barring the City from interfering with the distribution of the Herald. That Order was later dissolved, when a Magistrate Judge found the ordinances, upon which the City had relied, to be constitutional. The Magistrate's decision was upheld by the district court. *See generally Steele and Northern Herald Publications, Inc. v. City of Bemidji*, 114 F.Supp.2d 838 (D.Minn.2000).

The decision was reversed by the Eighth Circuit Court of Appeals, which found that the City's ordinances violated the First Amendment.[4] *See generally Steele and Northern Herald Publications, Inc. v. City of Bemidji*, 257 F.3d 902 (8th Cir.2001). In the words of the Court of Appeals, "Neither ordinance on its face proscribes *giving away* newspapers that the donor is *holding* while standing on a City sidewalk." *Steele*, 257 F.3d at 907.

The matter is now before the Court on the Court of Appeals' remand for a determination as to whether the City defendants are entitled to qualified immunity and, thus, immune from suit.

---

**2.** These sections provide as follows:

The "solicitation ordinance," Section 6.39, prohibits any "peddler, business solicitor, contribution solicitor ... or transient merchant" from engaging in "any such business" without obtaining a permit.

The "obstruction ordinance," Section 10.31, makes it unlawful for anyone to "place, deposit, display or offer for sale any fence, goods or other obstructions upon, over, across or under any public property without first having obtained a written permit from the Council."

**3.** The required face-value of this insurance policy and bond was not specified in the letter.

**4.** The Eighth Circuit also upheld the district court's ruling that Steele, who is not a lawyer, may not represent the Herald in federal court, and that Steele cannot maintain an action against the non-government defendants. *Steele and Northern Herald Publications, Inc. v. City of Bemidji*, 257 F.3d 902, 905 (8th Cir.2001).

## II. *Discussion*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Liberty Lobby*, 477 U.S. at 248–49, 106 S.Ct. 2505.

■ Qualified immunity is a question of law and an entitlement of immunity from suit rather than a mere defense to liability; thus, it is effectively lost if a case is erroneously permitted to go to trial. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Being a question of law, it is uniquely suited to summary disposition.

### B. *Material Facts in Dispute*

Based on the record in this case, there are clearly facts in dispute concerning the events transpiring outside the Paul Bunyan Mall and the Post Office. Therefore, the Court considers the facts in the light most favorable to Steele, the nonmoving party. Even doing so, however, most but not all of the City defendants are entitled to qualified immunity for their actions.

### C. *Judgment as a Matter of Law*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This shield is known as qualified immunity.

To determine whether the five above-named defendants have qualified immunity in this case, the Court makes a three-pronged inquiry. To withstand a defense of qualified immunity at the summary judgment stage,

> a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir.1999).

First, Steele has clearly asserted a violation of a constitutional right. Beyond that, the claim of right was upheld by the Court of Appeals, which ruled that Bemidji's permit schemes are prior restraints that operate in derogation of the First Amendment. *See Steele*, 257 F.3d at 907. Thus, the first prong of this inquiry is satisfied.

Second, the Court must determine whether the asserted right was "clearly established" at the time of defendants' challenged conduct. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The challenged action need not have been previously held unlawful, but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034.

Defendants correctly note that the City's ordinances had not been ruled unconstitutional in 1998. They further point

to the Magistrate's ruling, upheld by the District Court, finding the ordinances constitutional. *See Steele*, 114 F.Supp.2d at 851–55. From this, the City defendants argue that while the ordinances may have been found unconstitutional on appeal, their infringement on the First Amendment was not clearly established at the time of the incidents about which Steele complains.

█ This argument is not without some persuasive force. The Court can hardly expect police officers to know better than judges that a duly-enacted city law violated the Constitution. Thus, the Court finds the police officers, who relied on the advice given to them by the City Attorney, are entitled to qualified immunity in this case. But this determination does not end the Court's inquiry. In the words of the Eighth Circuit, viewing the facts in the light most favorable to Steele, the City Attorney sought to apply these ordinances to Mr. Steele "whether or not he attempt[ed] to sell his newspapers and whether or not he place[d] them on City property." *Steele*, 257 F.3d at 907. Therefore, although the ordinances' unconstitutionality may not have been clearly established for all parties in August, 1998, the Court sees no basis on which the City Attorney could presume they were in conformity with the Constitution when Steele simply gave the Herald away, without charge, on the sidewalk outside the Post Office. The Court finds that the contours of the First Amendment are such that a reasonable city attorney would recognize this constitutional infirmity.

A reasonable attorney should understand that applying a city's ordinances to conduct the ordinance does not expressly prohibit—especially in an area which the Constitution protects as strongly as freedom of the press and freedom of expression—violates rights guaranteed by the First Amendment. *See Anderson*, 483

U.S. at 640, 107 S.Ct. 3034 (1987). The Court's view is supported by the City Attorney's contemporaneous letter of August 5, 1998, in which Mr. Felix flatly told Mr. Steele his ideas were not congenial to the City of Bemidji, and suggested he take his ideas and his desire to express them to another community.

The third prong of the analysis requires the Court to determine whether, taking the facts in the light most favorable to Steele, the nonmoving party, there is a genuine issue of material fact about the objective legal reasonableness of the defendants' conduct. The Court concludes that, with the exception of the City Attorney, each defendant's conduct was objectively reasonable.

1. *Phil Shealy, City Manager (Paul Bunyan Mall in February, 1998)*

Mr. Steele apparently challenges Mr. Shealy's conduct related to his attempts to distribute the Herald at the Mall on February 9, 1998. The Court considers Mr. Shealy's conduct to be objectively reasonable. According to Steele, he contacted Shealy after being ordered to stop selling the Herald at the mall. Shealy confirmed that Steele could not sell the newspaper at that location. Based on the actual language of the "solicitation" ordinance, and Mr. Shealy's reasonable assumption that the ordinance was constitutional, this conduct is entitled to qualified immunity.

2. *Michael Porter, Police Sergeant (Post Office in August, 1998)*

Sergeant Porter's conduct in the August, 1998, distribution incident at the Post Office was objectively reasonable. The Ninth Circuit has reasoned that, "when a city council has duly enacted an ordinance, police officers on the street are ordinarily entitled to rely on the assumption that the council members have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional

exercise of authority." *Grossman v. City of Portland,* 33 F.3d 1200, 1209 (9th Cir. 1994). Porter was entitled to rely on the assumption that the city ordinances were constitutional. Beyond this, his actions were conducted on advice from the City Attorney. As a police officer on the street, the Court considers that Sergeant Porter was objectively reasonable in relying on the City Attorney's advice in applying the city ordinances to Steele's conduct at the Post Office.

3. *Jon Hunt, Police Officer; and Robert Tell, Police Chief (Paul Bunyan Mall in February, 1998)*

For the same reasons that Shealy's conduct was objectively reasonable with regard to the February, 1998, incident at the Mall, so too was Officer Jon Hunt's and Chief Robert Tell's.

4. *Alan Felix, City Attorney*

For the reasons set forth above, the Court cannot find the Bemidji City Attorney's conduct in this case to be objectively reasonable. The City's ordinances do not, and did not, facially speak to the conduct in which Mr. Steele was engaged. To claim they did so, and to invoke the City's police power under these conditions when a citizen was merely disseminating ideas— however objectionable those ideas may have been to Bemidji's powers-that-be—is not objectively reasonable conduct.

III. *Conclusion*

For the foregoing reasons, defendants Shealy, Porter, Hunt, and Tell are entitled to summary judgment based on qualified immunity. But defendant Felix's motion for summary judgment on his claim of qualified immunity is denied.

Accordingly, IT IS ORDERED that:

1. Defendants' motion for summary judgment [Docket No. 127] is granted in part and denied in part.

2. Plaintiff Steele's request for leave to file supplemental materials [Docket No. 134] is denied.