EDWARD C. TUTTLE v. CASSIUS M. BUCK.[1]

February 19, 1909.

Nos. 15,915—(82).

**Competiton in Business—Complaint Good Against Demurrer.**

A complaint which states, in substance, that the defendant, a banker and man of wealth and influence in the community, maliciously established a barber shop, employed a barber to carry on the business, and used his personal influence to attract customers from the plaintiff's barber shop, not for the purpose of serving any legitimate purpose of his own, but for the sole purpose of maliciously injuring the plaintiff, whereby the plaintiff's business was ruined, states a cause of action.

Action in the district court for Wright county to recover $10,000 damages. Defendant demurred to the complaint on the ground it did not state a cause of action. From an order, Buckham, J., overruling the demurrer, defendant appealed. Affirmed.

[1] Reported in 119 N. W. 946.

107 M.—10

This appeal was from an order overruling a general demurrer to a complaint in which the plaintiff alleged:

That for more than ten years last past he has been and still is a barber by trade, and engaged in business as such in the village of Howard Lake, Minnesota, where he resides, owning and operating a shop for the purpose of his said trade. That until the injury hereinafter complained of his said business was prosperous, and plaintiff was enabled thereby to comfortably maintain himself and family out of the income and profits thereof, and also to save a considerable sum per annum, to wit, about $800. That the defendant, during the period of about twelve months last past, has wrongfully, unlawfully, and maliciously endeavored to destroy plaintiff's said business, and compel plaintiff to abandon the same. That to that end he has persistently and systematically sought, by false and malicious reports and accusations of and concerning the plaintiff, by personally soliciting and urging plaintiff's patrons no longer to employ plaintiff, by threats of his personal displeasure, and by various other unlawful means and devices, to induce, and has thereby induced, many of said patrons to withhold from plaintiff the employment by them formerly given. That defendant is possessed of large means, and is engaged in the business of a banker in said village of Howard Lake, at Dassel, Minnesota, and at divers other places, and is nowise interested in the occupation of a barber; yet in the pursuance of the wicked, malicious, and unlawful purpose aforesaid, and for the sole and only purpose of injuring the trade of the plaintiff, and of accomplishing his purpose and threats of ruining the plaintiff's said business and driving him out of said village, the defendant fitted up and furnished a barber shop in said village for conducting the trade of barbering. That failing to induce any barber to occupy said shop on his own account, though offered at nominal rental, said defendant, with the wrongful and malicious purpose aforesaid, and not otherwise, has during the time herein stated hired two barbers in succession for a stated salary, paid by him, to occupy said shop, and to serve so many of plaintiff's patrons as said defendant has been or may be able by the means aforesaid to direct from plaintiff's shop. That at the present time a barber so employed and paid by the defendant is occupying and nominally conducting the shop thus fitted and furnished by the defendant, without paying any

rent therefor, and under an agreement with defendant whereby the income of said shop is required to be paid to defendant, and is so paid in partial return for his wages. That all of said things were and are done by defendant with the sole design of injuring the plaintiff, and of destroying his said business, and not for the purpose of serving any legitimate interest of his own. That by reason of the great wealth and prominence of the defendant, and the personal and financial influence consequent thereon, he has by the means aforesaid, and through other unlawful means and devices by him employed, materially injured the business of the plaintiff, has largely reduced the income and profits thereof, and intends and threatens to destroy the same altogether, to plaintiff's damage in the sum of $10,000.

*Hall & Kolliner*, for appellant.

A general allegation in a complaint is of no avail as against the specific facts pleaded therein. Gowan v. Bensel, 53 Minn. 46; Carlson v. Presbyterian Board of Relief, 67 Minn. 436. Competition will not be restricted. Chambers v. Baldwin, 91 Ky. 121; Doremus v. Hennessy, 176 Ill. 608. Defendant's act was "damnum absque injuria." Auburn v. Douglass, 9 N. Y. 444; Bohn Mnfg. Co. v. Hollis, 54 Minn. 233; Ertz v. Produce Exchange, 79 Minn. 143. The motive of competition is immaterial. South Royalton v. Suffolk, 27 Vt. 505; Wilson v. Berg, 88 Pa. St. 167; Kiff v. Youmans, 86 N. Y. 324; Boyson v. Thorn, 98 Cal. 578; Glencoe v. Hudson, 138 Mo. 439; Transportation Co. v. Standard Oil Co., 50 W. Va. 611.

*F. E. Latham* and *Daniel Fish*, for respondent.

The rule of fair play is more and more enforced by the courts. Stillwater Water Co. v. Farmer, 89 Minn. 58, and 92 Minn. 230; Barclay v. Abraham, 121 Iowa, 619; Burke v. Smith, 69 Mich. 380; Kirkwood v. Finegan, 95 Mich. 543; Passaic v. Ely, 62 L. R. A. 673, Note.

ELLIOTT, J. (after stating the facts as above).

It has been said that the law deals only with externals, and that a lawful act cannot be made the foundation of an action because it was done with an evil motive. In Allen v. Flood, [1898] A. C. 1, 151, Lord Watson said that, except with regard to crimes, the law does not

take into account motives as constituting an element of civil wrong. In Mayor v. Pickles, [1895] A. C. 587, Lord Halsbury stated that if the act was lawful, "however ill the motive might be, he had a right to do it." In Raycroft v. Tayntor, 68 Vt. 219, 35 Atl. 53, 33 L. R. A. 225, 54 Am. St. 882, the court said that, "when one exercises a legal right only, the motive which actuates him is immaterial." In Jenkins v. Fowler, 24 Pa. St. 308, Mr. Justice Black said that "malicious motives make a bad act worse, but they cannot make that wrong which, in its own essence, is lawful." This language was quoted in Bohn Mnfg. Co. v. Hollis, 54 Minn. 223, 233, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. 319, and in substance in Ertz v. Produce Exchange, 79 Minn. 140, 143, 81 N. W. 737, 48 L. R. A. 90, 79 Am. St. 433. See also 2 Cooley, Torts (3d Ed.) 1505; Auburn v. Douglass, 9 N. Y. 444.

Such generalizations are of little value in determining concrete cases. They may state the truth, but not the whole truth. Each word and phrase used therein may require definition and limitation. Thus, before we can apply Judge Black's language to a particular case, we must determine what act is "in its own essence lawful." What did Lord Halsbury mean by the words "lawful act"? What is meant by "exercising a legal right"? It is not at all correct to say that the motive with which an act is done is always immaterial, providing the act itself is not unlawful. Numerous illustrations of the contrary will be found in the civil as well as the criminal law.

We do not intend to enter upon an elaborate discussion of the subject, or become entangled in the subtleties connected with the words "malice" and "malicious." We are not able to accept without limitations the doctrine above referred to, but at this time content ourselves with a brief reference to some general principles.

It must be remembered that the common law is the result of growth, and that its development has been determined by the social needs of the community which it governs. It is the resultant of conflicting social forces, and those forces which are for the time dominant leave their impress upon the law. It is of judicial origin, and seeks to establish doctrines and rules for the determination, protection, and enforcement of legal rights. Manifestly it must change as society changes and new rights are recognized. To be an efficient instrument, and

not a mere abstraction, it must gradually adapt itself to changed conditions. Necessarily its form and substance have been greatly affected by prevalent economic theories.

For generations there has been a practical agreement upon the proposition that competition in trade and business is desirable, and this idea has found expression in the decisions of the courts as well as in statutes. But it has led to grievous and manifold wrongs to individuals, and many courts have manifested an earnest desire to protect the individual from the evils which result from unrestrained business competition. The problem has been to so adjust matters as to preserve the principle of competition and yet guard against its abuse to the unnecessary injury to the individual. So the principle that a man may use his own property according to his own needs and desires, while true in the abstract, is subject to many limitations in the concrete. Men cannot always, in civilized society, be allowed to use their own property as their interests or desires may dictate without reference to the fact that they have neighbors whose rights are as sacred as their own. The existence and well-being of society require that each and every person shall conduct himself consistently with the fact that he is a social and reasonable person. The purpose for which a man is using his own property may thus sometimes determine his rights, and applications of this idea are found in Stillwater Water Co. v. Farmer, 89 Minn. 58, 93 N. W. 907, 60 L. R. A. 875, 99 Am. St. 541, Id., 92 Minn. 230, 99 N. W. 882, and Barclay v. Abraham, 121 Iowa, 619, 96 N. W. 1080, 64 L. R. A. 255, 100 Am. St. 365.

Many of the restrictions which should be recognized and enforced result from a tacit recognition of principles which are not often stated in the decisions in express terms. Sir Frederick Pollock notes that not many years ago it was difficult to find any definite authority for stating as a general proposition of English law that it is wrong to do a wilful wrong to one's neighbor without lawful justification or excuse. But neither is there any express authority for the general proposition that men must perform their contracts. Both principles, in this generality of form and conception, are modern and there was a time when neither was true. After developing the idea that law begins, not with authentic general principles, but with the enumeration of particular remedies, the learned writer continues: "If there exists, then, a posi-

tive duty to avoid harm, much more must there exist the negative duty of not doing wilful harm, subject, as all general duties must be subject, to the necessary exceptions. 'The three main heads of duty with which the law of torts is concerned, namely, to abstain from wilful injury, to respect the property of others, and to use due diligence to avoid causing harm to others, are all alike of a comprehensive nature." Pollock, Torts, (8th Ed.) p. 21. He then quotes with approval the statement of Lord Bowen that "at common law there was a cause of action whenever one person did damage to another, wilfully and intentionally, without just cause or excuse."

In Plant v. Woods, 176 Mass. 492, 57 N. E. 1011, 51 L. R. A. 339, 79 Am. St. 330, Mr. Justice Hammond said: "It is said also that, where one has the lawful right to do a thing, the motive by which he is actuated is immaterial. One form of this statement appears in the first headnote in Allen v. Flood, as reported in [1898] A. C. 1, as follows: 'An act lawful in itself is not converted by a malicious or bad motive into an unlawful act so as to make the doer of the act liable to a civil action.' If the meaning of this and similar expressions is that where a person has the lawful right to do a thing irrespective of his motive, his motive is immaterial, the proposition is a mere truism. If, however, the meaning is that where a person, if actuated by one kind of a motive, has a lawful right to do a thing, the act is lawful when done under any conceivable motive, or that an act lawful under one set of circumstances is therefore lawful under every conceivable set of circumstances, the proposition does not commend itself to us as either logically or legally accurate."

Similar language was used by Mr. Justice Wells in Walker v. Cronin, 107 Mass. 555; by Lord Coleridge in Mogul Steamship Co. v. McGregor, 21 Q. B. Div. 544–553; by Lord Justice Bowen in the same case, 23 Q. B. Div. 593; by Mr. Justice Holmes in Aikens v. Wisconsin, 195 U. S. 194, 204, 25 Sup. Ct. 3, 49 L. Ed. 154; by Chief Justice McSherry in Klingel v. Sharp, 104 Md. 233, 64 Atl. 1029, 7 L. R. A. (N. S.) 976, 118 Am. St. 399; and by Judge Sanborn in his dissenting opinion in Passaic Print Works v. Ely & Walker Dry Goods Co., 105 Fed. 163, 44 C. C. A. 426, 62 L. R. A. 673. Numerous cases will be found referred to in the note to this case in 62 L. R. A. 673, and in an article in 18 Harvard Law Rev. 411.

It is freely conceded that there are many decisions contrary to this view; but, when carried to the extent contended for by the appellant, we think they are unsafe, unsound, and illy adapted to modern conditions. To divert to one's self the customers of a business rival by the offer of goods at lower prices is in general a legitimate mode of serving one's own interest, and justifiable as fair competition. But when a man starts an opposition place of business, (not for the sake of profit to himself, but regardless of loss to himself) and for the sole purpose of driving his competitor out of business, and with the intention of himself retiring upon the accomplishment of his malevolent purpose, he is guilty of a wanton wrong and an actionable tort. In such a case he would not be exercising his legal right, or doing an act which can be judged separately from the motive which actuated him. To call such conduct competition is a perversion of terms. It is simply the application of force without legal justification, which in its moral quality may be no better than highway robbery.

Nevertheless, in the opinion of the writer this complaint is insufficient. It is not claimed that it states a cause of action for slander. No question of conspiracy or combination is involved. Stripped of the adjectives and the statement that what was done was for the sole purpose of injuring the plaintiff, and not for the purpose of serving a legitimate purpose of the defendant, the complaint states facts which in themselves amount only to an ordinary everyday business transaction. There is no allegation that the defendant was intentionally running the business at a financial loss to himself, or that after driving the plaintiff out of business the defendant closed up or intended to close up his shop. From all that appears from the complaint he may have opened the barber shop, energetically sought business from his acquaintances and the customers of the plaintiff, and as a result of his enterprise and command of capital obtained it, with the result that the plaintiff, from want of capital, acquaintance, or enterprise, was unable to stand the competition and was thus driven out of business. The facts thus alleged do not, in my opinion, in themselves, without reference to the way in which they are characterized by the pleader, tend to show a malicious and wanton wrong to the plaintiff.

A majority of the justices, however, are of the opinion that, on the

principle declared in the foregoing opinion, the complaint states a cause of action, and the order is therefore affirmed.

Affirmed.

JAGGARD, J., dissents.