John GIESEKE, on behalf of DIVER-
SIFIED WATER DIVERSION,
INC., Respondent,

v.

IDCA, INC., et al., Appellants.

No. A12–0713.

Supreme Court of Minnesota.

March 26, 2014.

Todd Wind, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent.

Lisa Lodin Peralta, Peralta & Peralta, Ltd., Minneapolis, MN; and Kelly Grif-

fitts, Griffitts Law Offices, PLLC, Bloomington, MN, for appellants.

## OPINION

DIETZEN, Justice.

The primary question before us is whether Minnesota should formally recognize a cause of action for tortious interference with prospective economic advantage. John Gieseke, on behalf of Diversified Water Diversion, Inc. (Diversified), brought an action against appellants IDCA, Inc., et al. (IDCA), asserting, among other claims, tortious interference with Diversified's prospective economic advantage. Following trial, an advisory jury found, among other things, that IDCA had tortiously interfered with Diversified's prospective economic advantage and that Diversified sustained $220,000 in damages. The district court issued findings of fact and conclusions of law and entered an order for judgment consistent with the jury's determination. IDCA subsequently moved for judgment as a matter of law, arguing that Minnesota does not recognize a cause of action for tortious interference with prospective economic advantage and even if such a tort were available, Diversified failed to show a reasonable expectation of economic advantage. IDCA also moved for a new trial or remittitur, arguing that the damages were excessive. The district court denied the post-trial motions, and the court of appeals affirmed. We reaffirm that tortious interference with prospective economic advantage is a viable claim in Minnesota. But we reverse and vacate the judgment on the tortious interference claim, because Diversified failed to specifically identify any third parties with whom it had a reasonable expectation of a future economic relationship, and failed to prove damages caused by the wrongful interference with such a relationship.

This case arises out of a protracted dispute between appellant Michael Hogenson (Mike), who owns Standard Water Control Systems, Inc. (Standard), and his brother Arthur Hogenson (Art), who is a part-owner of Diversified. Standard and Diversified compete with each other in the drain tile installation business in the Twin Cities metropolitan area. Standard was incorporated in 1984, and each brother held 50 percent ownership of the stock. Mike and Art also owned Hogenson Properties, a holding company for various properties.

In 1999, Mike and Art had a falling out and divided their businesses so that Mike became the sole owner of Standard and Art became the sole owner of Hogenson Properties. John Gieseke, a friend of Art's, was terminated from his employment with Standard. In 2000, Gieseke started Diversified with another ex-employee of Standard as a competing drain tile business, and six months later Art joined the business and became a part-owner. Gieseke and Art each owned 50 percent of the company, with Gieseke serving as the chief executive officer and treasurer of Diversified, and Art as the vice president, chief operating officer, and secretary.

The dispute between the two brothers generated two lawsuits prior to this one, as well as protracted litigation regarding a default judgment against Art. In 2002, Standard sued Diversified, alleging misappropriation of trade secrets and unfair competition. The parties reached a settlement that included a mutual non-disparagement clause. In 2006, Diversified sued Standard for defamation and to enforce the non-disparagement agreement. Following trial, the district court concluded that Standard had defamed Diversified and entered judgment in favor of Diversified for punitive damages and an award of attorney fees. The court of appeals af-

firmed the award of punitive damages and attorney fees, and we denied review. *Diversified Water Diversion, Inc. v. Standard Water Control Sys., Inc.*, No. A07–1828, 2008 WL 4300258, at *2, *8 (Minn. App. Sept. 23, 2008), *rev. denied* (Minn. Dec. 16, 2008). Consequently, Diversified had a judgment against Standard in the amount of $67,717.

In 2007, MWH Properties, an entity owned by Mike, purchased a default judgment in the amount of $737,679 that Thomas Fallon had obtained in September 2007 against Art and Diversified. The judgment arose out of a personal injury that Fallon suffered while working at a Diversified jobsite. In February 2008, Art challenged the validity of the Fallon judgment on the ground that the court lacked subject matter jurisdiction over Fallon's claim and, thus, the default judgment was invalid.

While Art's challenge to the validity of the Fallon judgment was pending, MWH Properties pursued collection remedies against the judgment. Specifically, Mike directed MWH Properties to execute on the Fallon judgment, which resulted in a sheriff's sale being held to liquidate Art's assets and satisfy the Fallon judgment. Mike then formed a separate corporation, IDCA, Inc., for the purpose of purchasing Art's 50 percent interest in Diversified at the sheriff's sale, taking control of Diversified, and then shutting down the Diversified business.

Art's 50 percent interest in Diversified was sold to IDCA at the sheriff's sale. Having obtained a 50 percent interest in Diversified, Mike changed its registered address with the Minnesota Secretary of State to Standard's address. Mike also directed a towing company to seize Diversified's equipment at Art's house and deliver it to Standard's offices. Next, Debra Hogenson, Mike's wife, settled Diversified's $67,717 judgment against Standard for $12,000, via a release signed by Debra purporting to act as Diversified's vice president, and Mike, acting on behalf of Standard. Debra, however, had never been elected vice president of Diversified. Gieseke, Diversified's other 50 percent owner, did not receive notice of the release.

The current lawsuit was filed by Gieseke, on behalf of Diversified, against IDCA in September 2009. The amended complaint alleged, among other things, conversion of Diversified's equipment, replevin, and tortious interference with prospective economic advantage. The complaint included a request for equitable relief under Minn.Stat. § 302A.751 (2012). While this case was pending, the district court considered Art's motion to vacate the Fallon judgment and concluded that the court had lacked subject matter jurisdiction to enter that judgment. The Fallon judgment was consequently vacated by order dated August 27, 2010.[1]

The Gieseke lawsuit proceeded to trial in November 2011. Diversified presented testimony that IDCA, through Mike and Debra, tortiously interfered with its business. Specifically, testimony established that IDCA converted Diversified's equipment which prevented Diversified from doing business, changed Diversified's registered business address, settled Diversified's $67,717 judgment against Standard for $12,000, and obtained Diversified's tax returns. Diversified also presented testimony that it saw a dramatic decrease in business, with annual profits approximate-

---

1. The district court concluded that Fallon's claim was exclusively governed by the Workers' Compensation Act, and the district court consequently lacked subject matter jurisdiction over Fallon's personal injury claim. *See MWH Props., LLC v. Hogenson*, No. A10–2107, 2011 WL 3654410, at *1–2 (Minn.App. Aug. 22, 2011).

ly $78,450 lower than expected from 2009 through 2011. The parties stipulated that IDCA returned the seized equipment to Diversified on December 20, 2010.

An advisory jury answered special verdict questions finding, among other things, that: (1) appellants had converted Diversified's property, for which the jury awarded damages of $10,000; (2) Diversified was entitled to replevin, for which the jury awarded damages of $10,000; and (3) appellants tortiously interfered with Diversified's prospective economic advantage, for which the jury awarded damages of $220,000. The district court rejected the replevin damages as duplicative of the conversion damages, adopted the jury's findings on the conversion and tortious interference claims, and entered judgment against appellants IDCA, Mike, and Debra in the amount of $230,000.

Appellants moved for judgment as a matter of law or alternatively for a new trial on various grounds, including that tortious interference with prospective economic advantage is not a recognized cause of action in Minnesota, that Diversified did not have a reasonable expectation of economic advantage, and that the damages were excessive. The district court denied the motions and concluded, among other things, that Diversified had provided sufficient evidence that IDCA had tortiously interfered with Diversified's prospective economic advantage, and that the award of damages was supported by Gieseke's testimony that Diversified had lost profits from 2009 through 2011.

The court of appeals affirmed, holding that tortious interference with prospective economic advantage is a recognized cause of action in Minnesota and that the evidence was sufficient to support the jury's

verdict on liability and damages. *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 826 N.W.2d 816, 832–33 (Minn. App.2013). We granted IDCA's petition for review.

## I.

At issue is whether Minnesota recognizes a cause of action for tortious interference with prospective economic advantage. IDCA argues that we have not formally recognized such a cause of action and that, even if we have, Diversified's claim fails. Diversified counters that we have already recognized the cause of action and argues that the record adequately supports the jury's verdict and the district court's decision to deny IDCA's post-trial motion.

We review questions of law de novo, giving no deference to the district court's conclusions of law. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn. 2003). Whether or not we recognize a common law cause of action is a question of law that we review de novo. *See Nelson v. Productive Alts., Inc.*, 715 N.W.2d 452, 454 (Minn.2006). To answer the question raised by the parties, we will address whether Minnesota recognizes a cause of action for tortious interference with prospective economic advantage and, if so, identify the elements of that cause of action.

### A.

Initially, the parties dispute whether Minnesota already recognizes a cause of action for tortious interference with prospective economic advantage.[2] The history of our treatment of this particular tort claim can be traced primarily to three

2. Minnesota has long recognized the separate tort of intentional interference with an existing contract. *See Royal Realty Co. v. Levin,* 244 Minn. 288, 292, 69 N.W.2d 667, 671 (1955) ("Recovery may be had for inducing breach of contract.").

decisions: *Witte Transportation Co. v. Murphy Motor Freight Lines, Inc.,* 291 Minn. 461, 193 N.W.2d 148 (1971); *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975); and *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628 (Minn.1982).

In *Witte Transportation,* we acknowledged that a claim can be brought "for the wrongful interference with noncontractual as well as contractual business relationships." 291 Minn. at 465, 193 N.W.2d at 151 (citing *Tuttle v. Buck,* 107 Minn. 145, 119 N.W. 946 (1909)).[3] The parties in *Witte Transportation* were two motor carriers that operated between Rochester and the Twin Cities, and they had long competed with each other for the shipment business conducted between those locations. *Id.* at 462, 193 N.W.2d at 149. The plaintiff alleged that the defendant interfered with its customer relationships by sending false routing letters to wrongfully divert freight traffic from the plaintiff to the defendant. *Id.* at 463–65, 193 N.W.2d at 150–51. We determined that the evidence was insufficient to support a finding that the defendant intentionally interfered with the plaintiff's business relations with its customers for the purpose of wrongfully obtaining that business. *Id.* at 466, 193 N.W.2d at 151 (stating there was "no evidence" that action was taken "wantonly, willfully, and intentionally for the purpose of wrongfully diverting freight").

In *Wild,* we considered, among other issues, whether a claim for wrongful interference with business relationships by means of defamation is subject to a 2–year or 6–year statute of limitations. 302 Minn. at 442, 234 N.W.2d at 790. Although we did not fully address the contours of a claim for interference with a noncontractual relationship, we acknowledged that "wrongful interference with business relationships, also known as … interference with prospective advantage," is actionable in Minnesota. *Id.* at 442–43 n. 16, 234 N.W.2d at 790–91 n. 16 (citing cases and secondary sources). We explained that an action for "[w]rongful interference with contract protects an interest in the security of contractual relationships," whereas an action for "wrongful interference with business relationships protects an interest in the reasonable expectation of economic advantage." *Id.* at 442–43 n. 16, 234 N.W.2d at 790–91 n. 16. We held, based on the facts of the case, that the plaintiff's claim of wrongful interference was, essentially, part of a separate defamation claim and thus subject to a 2–year statute of limitations. *Id.* at 447, 234 N.W.2d at 793 (stating that "defamation [was] the means used to interfere with" the business relationships and to "cause any damage").

Finally, in *United Wild Rice,* we considered whether the district court erred in finding that the defendant, Nelson, had engaged in unfair competition by soliciting business from the customers of *United Wild Rice.* 313 N.W.2d at 631–32. We acknowledged, again, that Minnesota "has recognized a cause of action for wrongful interference with both present and prospective contractual relations." *Id.* at

---

**3.** In *Tuttle,* we determined that the plaintiff's complaint stated a valid cause of action based on allegations that the defendant had "wrongfully, unlawfully, and maliciously endeavored to destroy plaintiff's [barbershop] business" by "persistently and systematically" driving customers away from the plaintiff with threats, false reports, and accusations against the plaintiff. 107 Minn. at 146, 151–52, 119 N.W. at 946. Although we did not describe the claim as "tortious interference with prospective economic advantage," we clearly recognized that the unjustified interference with a noncontractual business expectancy is actionable. *Id.* at 151, 119 N.W. at 948 (stating that to start a business in opposition to a competitor "for the sole purpose of driving [the] competitor out of business" and for a "malevolent purpose" is an actionable tort).

632.[4] We identified the "elements of the tort of intentional interference with prospective contractual relations," as set out in the Restatement (Second) of Torts § 766B (1979). *United Wild Rice, Inc.*, 313 N.W.2d at 632–33. While it was undisputed that Nelson had "solicit[ed] and enter[ed] into contracts with United [Wild Rice's] potential customers," we concluded that those activities fell "squarely within the ambit of competition" and thus were not improper. *Id.* at 633.

Relying on *Harbor Broadcasting, Inc. v. Boundary Waters Broadcasters, Inc.*, 636 N.W.2d 560 (Minn.App.2001), IDCA notes that Minnesota courts have used inconsistent terminology when describing a claim for tortious interference and argues that we have not formally recognized tortious interference with a prospective economic advantage, the claim Diversified raised below. In *Harbor Broadcasting*, the court of appeals affirmed the district court's dismissal of plaintiff's claim for tortious interference with business expectancy, concluding that the claim was implicitly preempted by the Federal Communications Act. *Id.* at 570. The court declined to decide whether a claim for tortious interference with business expectancy is actionable in Minnesota, and whether such a claim is distinguishable from tortious interference with prospective contractual relations, as recognized by this court in *United Wild Rice. Id.* at 569 n. 4.

It is true that we have used a variety of phrases when discussing the tort of interference with prospective economic advantage. Those phrases include interference with prospective contractual relations, *United Wild Rice, Inc.*, 313 N.W.2d at 632; interference with prospective advantage, *Wild*, 302 Minn. at 442 n. 16, 234 N.W.2d at 790–91 n. 16; and interference with noncontractual business relationships, *Witte Transp. Co.*, 291 Minn. at 465, 193 N.W.2d at 151. But commentators and scholars agree that those phrases describe the general contours of a single type of claim, commonly referred to as tortious interference with prospective economic advantage. *See, e.g.*, Orrin K. Ames III, *Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort*, 35 Cumb. L.Rev. 317, 323–24 (2005) (explaining that various names are used to refer to the same cause of action including "tortious interference with business relations, tortious interference with economic relations, prospective economic or business advantage, prospective advantageous relationship, and prospective contractual relation").[5] We agree and have recognized that, regardless of the title, "a wrongful interference with the formation of a contract [is] no less actionable than a wrongful interference with an existing contract." *Carnes v. St. Paul Union Stockyards Co.*, 164 Minn. 457, 461–62, 205 N.W. 630, 631 (1925).[6]

**4.** We first concluded that there was no showing of interference with existing contractual relationships based on the hiring of former United Wild Rice employees. *United Wild Rice, Inc.*, 313 N.W.2d at 632.

**5.** *See also* Alex B. Long, *The Business of Law and Tortious Interference*, 36 St. Mary's L.J. 925, 930 (2005) (noting that interference with prospective contractual relations is also known as "interference with prospective economic relations, economic advantage, or business relations"); James O. Pearson, Jr., Annotation, *Liability for Interference With At Will Business Relationship*, 5 A.L.R.4th 9, 16 § 2 (1981) (stating that many terms have been used to describe tortious interference with the most popular being "interference with prospective economic advantage," and the various terms "refer to only one tort").

**6.** Moreover, although there is variation in the name or interpretation of the elements, the majority of state courts recognize some form of a cause of action for tortious interference with prospective economic advantage. *See,*

We reaffirm that a cause of action for tortious interference with prospective economic advantage is a viable claim in Minnesota. Further, the phrase "tortious interference with prospective economic advantage" most accurately describes the cause of action. It is not necessary to delve into the legal distinctions, if any, between interference with business expectancy and interference with prospective contractual relationships. But it will be useful to more clearly describe the elements necessary to successfully pursue the claim. We therefore next consider the elements of a claim for tortious interference with prospective economic advantage.

### B.

Although we have previously identified the elements of a claim for wrongful interference with an existing contract, *see Furlev Sales and Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982) (identifying five elements of the claim for wrongful interference with a contract), we have not done so for claims of tortious interference with prospective eco-

nomic advantage. We have, however, relied on the description of the tort provided in the Restatement (Second) of Torts. *See United Wild Rice, Inc.*, 313 N.W.2d at 632–33. The Restatement provides:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (1979); *see also* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Civil,* CIVJIG 40.35 (5th ed.2006) (interfering tortiously with a prospective economic advantage means "intentionally and improperly interfering with

*e.g., Ellis v. City of Valdez,* 686 P.2d 700, 708 (Alaska 1984); *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal. Rptr.2d 29, 63 P.3d 937, 950 (2003); *Van Osdol v. Vogt,* 908 P.2d 1122, 1126 n. 6 (Colo. 1996); *Democratic State Comm. of D.C. v. Bebchick,* 706 A.2d 569, 573 (D.C.1998); *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.,* 113 Hawai'i 77, 148 P.3d 1179, 1217–18 (2006); *Highland Enters., Inc. v. Barker,* 133 Idaho 330, 986 P.2d 996, 1004 (1999); *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 370 (1998); *Clark v. Figge,* 181 N.W.2d 211, 214 (Iowa 1970); *Gerhardt v. Harris,* 261 Kan. 1007, 934 P.2d 976, 987 (1997); *Kenney v. Hanger Prosthetics & Orthotics, Inc.,* 269 S.W.3d 866, 870 (Ky.Ct.App.2007); *Rutland v. Mullen,* 798 A.2d 1104, 1110 (Me.2002); *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners Inc.,* 492 Mich. 40, 821 N.W.2d 1, 3 (2012); *Maloney v. Home & Inv. Ctr., Inc.,* 298 Mont. 213, 994 P.2d 1124, 1132 (2000); *Macke v. Pierce,* 266 Neb. 9, 661

N.W.2d 313, 317 (2003); *Wichinsky v. Mosa,* 109 Nev. 84, 847 P.2d 727, 729–30 (1993); *Baldasarre v. Butler,* 132 N.J. 278, 625 A.2d 458, 465 (1993); *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 785 N.Y.S.2d 359, 818 N.E.2d 1100, 1103–04 (2004); *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.,* 330 N.C. 666, 412 S.E.2d 636, 644–45 (1992); *Trade 'N Post, L.L.C. v. World Duty Free Ams., Inc.,* 628 N.W.2d 707, 717 (N.D.2001); *McGanty v. Staudenraus,* 321 Or. 532, 901 P.2d 841, 844 (1995); *Mesolella v. City of Providence,* 508 A.2d 661, 669 (R.I.1986); *Landstrom v. Shaver,* 561 N.W.2d 1, 16 (S.D.1997); *Trau–Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn.2002); *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex.2001); *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 302–04 (Utah 1982); *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC,* 284 Va. 382, 732 S.E.2d 676, 688 (2012); *J.A. Morrissey, Inc. v. Smejkal,* 188 Vt. 245, 6 A.3d 701, 708–09 (2010); *Gore v. Sherard,* 50 P.3d 705, 710 (Wyo.2002).

another person's prospective contractual relationship").

■ Our case law and the Restatement provide several principles that are relevant to determining the elements of this claim. Initially, it is important to recognize that a claim for wrongful interference with a contract and a claim for tortious interference with a prospective economic advantage protect different interests. We have said, for example, that a cause of action for "interference with a contract protects an interest in the security of contractual relationships," while a cause of action for "interference with business relationships protects an interest in the reasonable expectation of economic advantage." *Wild*, 302 Minn. at 442–43 n. 16, 234 N.W.2d at 790–91 n. 16.

Moreover, the law affords greater protection to *existing* contractual relationships, than to *prospective* business relationships. *See* Restatement (Second) of Torts § 767, cmt. j (1979) ("[G]reater protection is given to the interest in an existing contract than to the interest in acquiring prospective contractual relations."). We have long recognized that lawful competition must be encouraged, fostered, and protected. *See Sorenson v. Chevrolet Motor Co.*, 171 Minn. 260, 261–62, 214 N.W. 754, 754 (1927) ("Trade must be free and unrestricted, [and] . . . within the zone of fair dealing. Competition justifies the use of all lawful and fair means to gain the trade that would otherwise go to a competitor in business."). Indeed, "[t]he heart of our national economic policy long has been faith in the value of competition." *Standard Oil Co. v. Fed. Trade Comm'n*, 340 U.S. 231, 248, 71 S.Ct. 240, 95 L.Ed. 239

(1951). Consequently, "[c]ompetition is favored in the law." *United Wild Rice, Inc.*, 313 N.W.2d at 633. Thus, we have "never allowed a recovery for negligent wrongful interference with a business relationship." *Witte Transp. Co.*, 291 Minn. at 466, 193 N.W.2d at 151. We have instead required the plaintiff to show "wrongful" or "unlawful" interference. *See United Wild Rice, Inc.*, 313 N.W.2d at 633 (stating that "Nelson did not employ wrongful means in carrying out the interference"); *Sorenson*, 171 Minn. at 263, 214 N.W. at 755 (stating that "any lawful means to accomplish a lawful purpose" may be used, but one "may not intentionally injure or destroy [another's] business to accomplish an unlawful purpose").

■ The Restatement (Second) of Torts § 767 (1979) examines seven factors to determine whether the claimed interference is wrongful.[7] While examination of each of the seven factors may not be necessary in every case, the factors provide a useful means for assessing the impact of the defendant's conduct, if any, on valid competition interests. To ensure that fair competition is not chilled, a claim for tortious interference with prospective economic advantage must be limited to those circumstances in which the interference is intentional and independently tortious or unlawful, rather than merely unfair. *See Witte Transp. Co.*, 291 Minn. at 466, 193 N.W.2d at 151 (concluding after review of the record that there was no evidence the defendant's interference was done "wantonly, willfully, and intentionally for the purpose of wrongfully diverting freight"). *See also Della Penna v. Toyota Motor*

---

7. The seven factors are: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. Restatement (Second) of Torts § 767.

*Sales, U.S.A., Inc.,* 11 Cal.4th 376, 45 Cal. Rptr.2d 436, 902 P.2d 740, 751 (1995) (requiring an act that is "wrongful by some legal measure other than the fact of interference itself," and stating that the law "takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties"); *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713, 726 (Tex.2001) (holding that the interference must be "independently tortious or unlawful," not "merely 'sharp' or unfair").[8] The requirement of independently tortious or unlawful conduct adequately apprises potential defendants of the conduct that will subject them to liability, but ensures that businesses may rigorously compete with one another without fear of liability, as long as they do so lawfully.

We hold that to recover for tortious interference with prospective economic advantage, a plaintiff must prove the following five elements:

1) The existence of a reasonable expectation of economic advantage;

2) Defendant's knowledge of that expectation of economic advantage;

3) That defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;

4) That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and

5) That plaintiff sustained damages.

These elements are similar to those applied by the majority of states that recognize tortious interference with a prospective economic advantage. *See, e.g., Hayes v. N. Hills Gen. Hosp.,* 590 N.W.2d 243, 248 (S.D.1999) (applying a similar five element test).[9]

In summary, we reaffirm our longstanding recognition of the claim of tortious interference with prospective economic advantage. To succeed on this claim, a plaintiff must prove the five elements set forth above, including that the defendant's tortious interference was intentional and ei-

**8.** *See also Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 867 (7th Cir.1999) (applying Illinois law and noting that Illinois courts require the defendant's conduct to involve actionable fraud or be otherwise independently tortious); *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal. Rptr.2d 29, 63 P.3d 937, 954 (2003) (holding that an act is "independently wrongful if it is unlawful, that is if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard"); *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 785 N.Y.S.2d 359, 818 N.E.2d 1100, 1103 (2004) (stating that "as a general rule, the defendant's conduct must amount to a crime or an independent tort"); *Trade 'N Post, L.L.C. v. World Duty Free Ams., Inc.,* 628 N.W.2d 707, 721 (N.D.2001) (holding that a "plaintiff must establish that the interfering conduct was independently tortious or otherwise in violation of state law"); *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,* 283 Or. 201, 582 P.2d 1365, 1371 (1978) (defining "wrongful" to mean "wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession").

**9.** *See also J & S Servs., Inc. v. Tomter,* 139 P.3d 544, 551 (Alaska 2006); *Macke v. Pierce,* 266 Neb. 9, 661 N.W.2d 313, 317 (2003); *Trade 'N Post, L.L.C. v. World Duty Free Ams., Inc.,* 628 N.W.2d 707, 717 (N.D.2001); *Burke v. Gregg,* 55 A.3d 212, 222 (R.I.2012); *J.A. Morrissey, Inc. v. Smejkal,* 188 Vt. 245, 6 A.3d 701, 708–09 (2010); Dan B. Dobbs, et al., *The Law of Torts* § 638, at 555 (2d ed.2011) (summarizing the tort as applied around the country as requiring a plaintiff to satisfy a similar four element test).

ther independently tortious or in violation of a state or federal statute or regulation.

## II.

IDCA next argues that the district court erred by denying its motion for judgment as a matter of law. IDCA contends that the evidence is insufficient to establish that it tortiously interfered with a prospective economic advantage held by Diversified.

The denial of a motion for judgment as a matter of law presents a question of law that we review de novo. *Isaac v. Ho*, 825 N.W.2d 379, 383 (Minn.2013). We view the evidence in the light most favorable to the prevailing party. *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 229 (Minn.2010). A court may grant judgment as a matter of law if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Minn. R. Civ. P. 50.01(a); *see also In re Estate of Butler*, 803 N.W.2d 393, 399 (Minn.2011). When the district court has denied a motion for judgment as a matter of law, we must affirm "if, in the record, there is any competent evidence reasonably tending to sustain the verdict." *Pouliot v. Fitzsimmons*, 582 N.W.2d 221, 224 (Minn.1998) (citation omitted) (internal quotation marks omitted).

IDCA asserts that Diversified failed to introduce sufficient evidence to prove each of the elements of a claim for tortious interference with a prospective economic advantage. The parties raise three specific issues: (1) whether Diversified demonstrated the existence of a reasonable expectation of economic advantage; (2) whether the Fallon judgment excuses IDCA's interference; and (3) whether Diversified demonstrated that it sustained damages as a result of IDCA's wrongful interference. We begin with IDCA's claim

that Diversified failed to demonstrate the existence of a reasonable expectation of economic advantage.

IDCA argued to the district court that Diversified failed to present sufficient evidence of a reasonable expectation of economic advantage. Before our court, IDCA argues that Diversified failed to identify a specific third party with whom it had a prospective business relationship with which IDCA tortiously interfered. In the absence of that showing, IDCA argues, Diversified's claim fails as a matter of law.

We have previously considered this element in the context of a factual record demonstrating the existence of specific third parties with whom the plaintiff had a reasonable expectation of future economic advantage. In *United Wild Rice*, the evidence established that the defendant "actively solicited business from wild rice producers, farmers, and buyers," including "at least three customers who were currently under contract with [the plaintiff]." 313 N.W.2d at 631. Thus, the alleged interference involved specifically identified customers. In *Witte Transportation*, the record demonstrated the existence of a "continuing relationship" with freight consignees who had signed letters providing directions for future freight shipments, and identified six consignees who were specifically impacted by the defendant's actions. 291 Minn. at 462, 464, 193 N.W.2d at 149–50. Finally, in *North Central Co. v. Phelps Aero*, evidence was offered on "the identity of the persons to whom [North Central] granted the use of its plane," whose use of the plane allegedly resulted in a loss of business for Phelps Aero. 272 Minn. 413, 420, 139 N.W.2d 258, 263 (1965).

The plaintiff bears the burden to demonstrate the existence of a reasonable expectation of an economic advantage. *See*

*Gore v. Sherard,* 50 P.3d 705, 710 (Wyo. 2002). The requirement to identify specific third parties with whom the plaintiff claims prospective economic relationships promotes the interest to be protected: a *reasonable* expectation of a future economic advantage. *See Wild,* 302 Minn. at 442–43 n. 16, 234 N.W.2d at 790–91 n. 16. Further, requiring plaintiffs to demonstrate the existence of specific third parties with whom the plaintiff had a reasonable expectation of a future economic relationship means that defendants are liable only for "the expectation that the relationship eventually will yield the desired benefit," rather than "the more speculative expectation that a potentially beneficial relationship will arise." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937, 957 (2003) (citation omitted) (internal quotation marks omitted).

Indeed, federal courts applying Minnesota law have concluded that the plaintiff must identify a specific third party with whom the defendant tortiously interfered. *See Int'l Travel Arrangers v. NWA, Inc.,* 991 F.2d 1389, 1405 (8th Cir.1993) (rejecting claim for loss of "prospective economic relations with air travel customers" and stating that "the mere general loss of possible unspecified customers does not" suffice under Minnesota law); *H Enters. Int'l, Inc. v. Gen. Elec. Capital Corp.,* 833 F.Supp. 1405, 1417 (D.Minn.1993) (stating that "[t]he mere loss of unspecified business does not establish" interference with prospective economic advantage because "wrongful interference with prospective business relations requires intentional conduct affecting specific relationships"). Additionally, the majority of state courts that have considered the issue require the plaintiff to demonstrate the existence of a prospective economic advantage with at least one specific, identifiable third party with which the defendant interfered.[10]

 We conclude that to prove the defendant tortiously interfered with plaintiff's prospective economic advantage, a plaintiff must specifically identify a third party with whom the plaintiff had a reasonable probability of a future economic relationship. Thus, a plaintiff's projection

---

10. *See, e.g., Country Corner Food and Drug, Inc. v. First State Bank & Trust Co. of Conway, Ark.,* 332 Ark. 645, 966 S.W.2d 894, 898 (1998) (stating that "[i]t is elementary that some precise business expectancy . . . be obstructed," and the failure to allege "with what business expectancy the Bank intended to interfere" defeated the claim); *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla.1994) ("[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement" because "no cause of action exists for tortious interference with a business's relationship to the community at large" and the "mere hope that some . . . past customers may choose to buy again" is insufficient); *MAU, Inc. v. Human Techs., Inc.,* 274 Ga.App. 891, 619 S.E.2d 394, 398 (2005) (holding that summary judgment was proper where the plaintiff "was unable to identify any of its customers" with whom the defendant interfered); *Comfax* *Corp. v. N. Am. Van Lines, Inc.,* 587 N.E.2d 118, 124–25 (Ind.Ct.App.1992) (summary judgment was proper where plaintiff failed to state any facts that the defendant interfered with business relationships with any third parties "beyond bald assertions of possible business opportunities"); *Burke v. Gregg,* 55 A.3d 212, 222 (R.I.2012) (affirming dismissal of complaint alleging that interference "damage[ed] [plaintiff's] image in the public eye" and noting that the "purely speculative" allegation "fail[ed] to allege any causal connection between [the defendant's] statements and interference with even one specific, prospective relationship"); *Pac. Nw. Shooting Park Ass'n v. City of Sequim,* 158 Wash.2d 342, 144 P.3d 276, 281 n. 2 (2006) (stating that to establish a tortious interference claim, the plaintiff must show "a relationship between parties contemplating a contract," and consequently "a specific relationship between it and identifiable third parties") (citation omitted) (internal quotation omitted).

of future business with unidentified customers, without more, is insufficient as a matter of law. *See Du Page Aviation Corp. v. Du Page Airport Auth.*, 229 Ill. App.3d 793, 171 Ill.Dec. 814, 594 N.E.2d 1334, 1340 (1992) (stating allegation of expectancy of future economic advantage through business relationships with "others" is insufficient); *United. Educ. Distribs., LLC v. Educ. Testing Serv.*, 350 S.C. 7, 564 S.E.2d 324, 329–30 (Ct.App.2002) (stating that plaintiff must demonstrate "that he had a truly prospective (or potential) contract with a third party," and a "mere offer to sell" or "the mere hope of a contract is insufficient").

 Diversified's theory of the case was that it had enjoyed business in the past from approximately 100 customers per year, and that it expected that level of business to continue in the future. But Diversified did not have many repeat customers, and it failed to identify a specific existing or prospective third party for whom it reasonably expected to do future drain tile or warranty work.[11] Consequently, Diversified's evidence of a prospective economic advantage is insufficient as a matter of law.

 Moreover, Diversified's alleged damages are speculative. Specifically, Diversified argued that it lost future warranty work from existing customers, but did not identify any of those customers. Gieseke testified that a few past customers had contacted him in 2009 about warranty work and that Diversified's inability to perform this work harmed its business reputation. There was also testimony that 2009 was a very good year in the drain tile business. The evidence regarding potential warranty work from existing customers does not sufficiently demonstrate that Diversified's expectation of economic advantage was damaged. Diversified's expectations were based on past success with customers whose drain tile needs were presumably already met. "The mere hope that some ... past customers may choose to buy again cannot be the basis for a tortious interference claim." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla.1994). Moreover, general damage to Diversified's business reputation is insufficient to establish that an expectation of economic advantage was damaged. *See Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.*, 29 Kan. App.2d 746, 31 P.3d 970, 976 (2001) (stating that an allegation of "general damage to [plaintiff's] reputation as a business" is insufficient for a tortious interference claim)

We recognize, as Gieseke testified, that Diversified could no longer conduct its business after IDCA seized the company's equipment. But even viewing the evidence in the light most favorable to the verdict, we conclude that Diversified failed to present evidence to establish anything more than an expectation that its past business record and reputation would allow it to gain future business.

---

11. We do not decide whether it is necessary to identify by name all the third parties for which the plaintiff seeks damages in order to satisfy the second element. *See, e.g., Hayes v. N. Hills Gen. Hosp.*, 590 N.W.2d 243, 250 (S.D.1999) (considering whether the third party must be identified by name). It is enough, for purposes of this case, to say that the plaintiff must specifically identify a third party for which there is a reasonable probability of a business relationship because "a mere hope or wish for such a relationship to arise is insufficient." *J.A. Morrissey, Inc. v. Smejkal*, 188 Vt. 245, 6 A.3d 701, 709 (2010) (stating "there must exist a reasonable probability that a business or contractual relationship would have arisen but for the conduct of the defendant"). The failure to specifically identify all the third parties, however, may limit a plaintiff's damages.

■ Because Diversified failed to specifically identify any third parties with whom it had a reasonable expectation of a future economic relationship, and failed to prove damages caused by the wrongful interference with such a relationship, Diversified's claim fails as a matter of law.[12] As a result, it is unnecessary for us to determine the other two issues, and we decline to do so.[13] While we affirm that tortious interference with prospective economic advantage is a viable claim in Minnesota, we reverse the court of appeals and remand to the district court with instructions to enter judgment as a matter of law in favor of appellants on that claim.[14]

Reversed and remanded.

LILLEHAUG, J., took no part in the consideration or decision of this case.

12. Diversified's conversion judgment was not appealed, and therefore is not affected by our decision.

13. IDCA's claim that it was privileged to interfere with Diversified's business because it was a 50 percent shareholder in the company is without merit. IDCA obtained the purported 50 percent interest at a sheriff's sale conducted after the execution of a void judgment. But a judgment declared void as a result of lack of subject matter jurisdiction is void from the beginning. *See Beede v. Nides Fin. Corp.*, 209 Minn. 354, 355–56, 296 N.W. 413, 414 (1941). Because the Fallon judgment was void from the beginning, IDCA obtained no rights in Diversified at the sheriff's sale.

14. Based on the conclusion that Diversified's claim fails on the reasonable expectation and damages elements, we do not address IDCA's challenge to the sufficiency of the evidence regarding its knowledge of Diversified's expectation of an economic advantage and whether its wrongful conduct caused Diversified's loss of that advantage and resulting damages. We also do not reach IDCA's argument that the district court erred in denying its motion for a new trial or remittitur, though we note that IDCA waived this argument by failing to raise it in its petition for review. *See George v. Estate of Baker*, 724 N.W.2d 1, 7 (Minn.2006); *see also Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 515 (Minn. 2012) (stating that "[a]lthough we have the discretion to consider additional issues, we generally will not address issues that were not specifically raised in the petition for review").