*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1248**

Ann Majerus,
Appellant,

vs.

Harvey L. Huyser,
Respondent,

Barbara St. John,
Respondent,

Tony Montgomery Realty and Auction Company, et al.,
Respondents.

**Filed May 31, 2016
Affirmed
Halbrooks, Judge**

Goodhue County District Court
File No. 25-CV-14-2097

William L. French, French Law Office, Rochester, Minnesota (for appellant)

Cheyenne M. Wendt, O'Brien & Wolf, L.L.P., Rochester, Minnesota (for respondent Harvey Huyser)

Einar E. Hanson, Strobel & Hanson, P.A., Hudson, Wisconsin (for respondent Barbara St. John)

Hillary R. Stonelake-Curtis, Dunlap & Seeger, P.A., Rochester, Minnesota (for respondents Tony Montgomery Realty and Auction Company, TMRA Company, and Tony Montgomery)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges the district court's grant of summary judgment to respondents, arguing that there are genuine issues of material fact. We affirm.

## FACTS

In 2002, appellant Ann Majerus hired a realtor to sell 187.09 acres of land that Majerus owned. Majerus received an offer to purchase her land for approximately $1,000,000, but she rejected the offer because she thought that the property was worth more.

By 2008, Majerus was in default on several mortgages secured by the property and owed $407,141.66 to the bank. With the assistance of legal counsel, Majerus negotiated an agreement with the bank to avoid foreclosure. She entered into an exclusive real estate auction contract with respondent Tony Montgomery Realty & Auction Company (TMRA) to sell her land at an auction. The contract obligated TMRA to "conduct said auction in a professional manner." The contract further provided that the "auctioneer shall due [sic] their best to acquire as much money for the subject property as they are capable." The contract listed the minimum selling price as "money owed bank." Majerus alleges that she also hired respondent Tony Montgomery, who owns TMRA, to be her "broker/real estate agent" and signed listing agreements with Montgomery and his

companies.  Majerus claims that she asked Montgomery for copies of these agreements but never received them.

Majerus attended the auction.  According to Majerus, Montgomery began the auction by stating that "the land is going to be sold today" and that "the sale is absolute." Absolute auctions are auctions that do not have a minimum selling price.  *Black's Law Dictionary* 149 (9th ed. 2009) (defining "auction without reserve" as synonymous with an "absolute action").  Majerus also alleges that Montgomery stated three times that there were "no building sites on any of the parcels" and that respondent Barbara St. John, the Holden Township town clerk who attended the auction, also stated that there were no building sites on any of the parcels.  Majerus claims that after Montgomery announced that there were no building sites on any of the parcels, at least five potential bidders left the auction.  Montgomery made an audio recording of the auction.  On the recording, Montgomery can be heard saying several times that there are two building entitlements on parcel two, which contains 124.65 of the property's 187.09 acres.

Majerus contends that she twice "forcefully" told Montgomery to stop the auction because she felt that Montgomery was not conducting the auction in a professional manner.  Majerus alleges that respondent Harvey L. Huyser "was talking very loudly, disrupting the proceedings, and deliberately intimidating bidders not to bid."  Majerus claims that Huyser made statements to the effect of "why are you bidding on that dummie, it doesn't have a building site" and "can't you see I'm bidding on this." Majerus claims that Montgomery refused to stop the auction when she instructed him to and that Montgomery stated, "[I]f you don't go through with the auction today, the

3

banker will be out here tomorrow and you will never get a penny." The audio recording of the auction does not support Majerus's allegations.

The realtor who represented Majerus in 2002 also attended the auction and submitted an affidavit corroborating Majerus's version of events at the auction. In the realtor's opinion, the auction was not conducted in a professional manner because Montgomery did nothing to stop Huyser from disrupting the auction. The realtor also opined that Montgomery breached his duties of loyalty and good faith as a real estate broker by not advertising the property adequately; making the warranty deed available at the auction (which drove down the price because it made the bidders believe that the sale was forced); stating that the land would absolutely be sold that day; stating that there were no building sites on any of the parcels (which drove down the price of the land); failing to include in the auction flier that there were at least two existing building sites; and dividing the property into only three parcels instead of six. According to the realtor, land prices in the county where Majerus's land was located had gone up "considerably" between 2002 and 2008, and the land should have sold for more than $1,000,000 at the auction.

Montgomery disputes Majerus's claims about the auction. He maintains that the auction was conducted in a professional manner. He notes that the audio recording demonstrates that he described the property as "gorgeous" and that he told the bidders that he would stay as long as they wanted. Montgomery asserts that he never stated the auction was absolute and that Majerus specifically gave her permission to sell the property at the end of the auction, as evidenced by the recording. He also asserts that the

4

advertising for the property was adequate. He advertised the property by distributing 200 auction bills, placing a sign describing the real estate and auction on each parcel, advertising the auction in several regional newspapers and on two websites, and holding open houses. St. John contends that she confirmed at the auction that two building sites existed on parcel two and that she did not interfere with the sale.

Huyser was the highest bidder at the auction and ultimately purchased the land for $497,986.81. After the mortgages and all expenses were paid, Majerus's net proceeds from the sale amounted to $9,734. Majerus claims that "[s]everal persons who wanted to buy the property before the auction were directed to Montgomery. Each would have paid far more than was brought at the auction. Montgomery would not consider the offers they made to buy the property."

In 2014, Majerus sued Montgomery and TMRA for breach of contract, Montgomery for breach of duty of loyalty, and St. John and Huyser for tortious interference with prospective economic advantage. The district court subsequently granted summary judgment in favor of all respondents on all claims. This appeal follows.

## DECISION

On appeal from summary judgment, we review de novo whether a genuine issue of material fact exists and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.* Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

5

show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "The party opposing summary judgment may not establish genuine issues of material fact by relying upon unverified and conclusory allegations, or postulated evidence that might be developed at trial, or metaphysical doubt about the facts." *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 783 (Minn. 2004). To survive summary judgment, the nonmoving party must produce concrete evidence and cannot rely on mere speculation. *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993). "[W]hen the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

## I.

Majerus argues that the district court erred by granting summary judgment to TMRA and Montgomery on her breach-of-contract claim. To maintain a breach-of-contract claim, a plaintiff must prove the following elements: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted). A breach-of-contract claim fails as a matter of law if the plaintiff cannot establish that she has suffered damages as a result of the breach. *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578-79 (Minn. App. 2004). A plaintiff cannot recover damages that are "remote, conjectural, or speculative." *Id.* at 579. "But damages need not be

proved with certainty; it is legally sufficient that a reasonable basis for approximating loss is shown." *Id.*

The district court concluded that "[t]he critical omission in this matter is that [Majerus] failed to bring forth any evidence identifying a prospective individual who would have bid on the property but for any of the [respondents'] actions." Instead, Majerus put forth only generalized evidence identifying her possible damages: her statement in her affidavit that at least five bidders left the auction after Montgomery announced that there were no building sites on any of the parcels; her opinion that Huyser succeeded in getting others not to bid on the property; her opinion that Montgomery cost her at least $1,000,000 by not promoting the building sites; her contention that several people wanted to buy the property before the auction and would have paid more than what the auction brought; and her realtor's opinion that property values had increased between the time of the $1,000,000 offer in 2002 and the auction.

Majerus has not identified a specific person who would have paid more at the auction but for Montgomery's alleged statements that there were no building sites on the property. She similarly has not identified anyone who would have bid more if Montgomery had not allowed Huyser to disrupt the auction as she claims. She also has not identified the people who she claims approached Montgomery before the auction with offers higher than what the auction brought, and she has not indicated what those people actually offered. The district court concluded that even if Montgomery had stated that there were no building sites on the property, no evidence other than speculation connects that statement and the bidders' departure from the auction. One would also have to

7

speculate that the bidders who left the auction after Montgomery's alleged statements would have bid more than Huyser. Furthermore, Majerus signed a contract with Montgomery to sell her property at an auction with the minimum selling price being the money that she owed to the bank. The contract was satisfied when Montgomery auctioned off the property for an amount greater than what Majerus owed to the bank. We agree with the district court that Majerus's damages are speculative in nature. Because Majerus has produced no concrete evidence of damages, her breach-of-contract claim against TMRA and Montgomery fails as a matter of law. Summary judgment is therefore appropriate on this claim.

## II.

Majerus argues that the district court erred by granting summary judgment to Montgomery on her claim that he breached his duty of loyalty. Majerus contends that Montgomery owed her duties that went beyond the auction contract, based on additional listing agreements.

The district court concluded that there was no evidence that Montgomery agreed to assume broader duties than those articulated in the auction contract. The only evidence that Majerus offered to show that Montgomery had assumed broader duties was her statement in her self-serving affidavit that she had signed listing agreements with Montgomery but never received copies of the agreements.

This claim is appropriate for summary judgment because, as the district court noted, Majerus produced no concrete evidence of damages. In support of this claim, Majerus offered the opinions of her former realtor that Montgomery's actions breached

8

the duty of loyalty.  The district court concluded that "there is no evidence of any specific individual or individuals who were prospective buyers who were not considered, did not attend, or did not bid at the auction but for any of the actions or omissions alleged to have occurred."  We agree with the district court's conclusion.  Majerus put forth no evidence of a buyer or bidder who would have paid more for the property if Montgomery had done what she claims he should have done.  Because Majerus offered no evidence of her damages, Montgomery is entitled to summary judgment on this claim.

## III.

Majerus argues that the district court erred by granting summary judgment to St. John and Huyser on her claim of tortious interference with prospective economic advantage.  To recover on a claim of tortious interference with prospective economic advantage, a plaintiff must prove the following elements:

> 1) The existence of a reasonable expectation of economic advantage;
> 2) Defendant's knowledge of that expectation of economic advantage;
> 3) That defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;
> 4) That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and
> 5) That plaintiff sustained damages.

*Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).  To maintain this action, "a plaintiff must specifically identify a third party with whom the plaintiff had a reasonable probability of a future economic relationship."

*Id.* at 221. "[A] plaintiff's projection of future business with unidentified customers, without more, is insufficient as a matter of law." *Id.* at 221-22. "The requirement to identify specific third parties with whom the plaintiff claims prospective economic relationships promotes the interest to be protected: a *reasonable* expectation of a future economic advantage." *Id.* at 221.

Majerus has not identified a specific third party who would have bid on the property but for the alleged statements made by St. John and Huyser. She instead relies on speculation that unidentified bidders were either intimidated into not bidding by Huyser's alleged behavior or discouraged from bidding by St. John's alleged statements. Majerus therefore cannot identify a specific third party with whom she had a reasonable probability of a future economic relationship. Because she has not made a sufficient showing on the claim, St. John and Huyser are entitled to summary judgment.

**Affirmed.**